Peter KEMPH, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–00943–CR.

Court of Appeals of Texas, San Antonio.

Nov. 24, 1999.

---

Bernard Campion, Campion & Campion, San Antonio, for Appellant.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

Peter Kemph ("Kemph") appeals his conviction for resisting arrest. In three points of error, Kemph asserts that the trial court erred in: (1) refusing to charge the jury on the right of self-defense against multiple assailants; (2) restricting the time permitted for voir dire; and (3) restricting the time permitted for closing argument. We reverse the trial court's judgment and remand the cause for a new trial.

### DISCUSSION

■ In his first point of error, Kemph contends that the trial court erred in the manner it charged the jury on the issue of self-defense. Specifically, Kemph asserts that he was entitled to a charge on the right of self-defense against multiple assailants. The State responds that Kemph was not entitled to the instruction because Kemph repudiated the very actions that the defense is meant to justify. In addition, the State responds that any error in failing to submit the requested defense was harmless.

■ "A defendant is entitled to a charge on the right of self-defense against multiple assailants if there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant." *Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App.1985); *see also Dickey v. State*, 979 S.W.2d 825, 828 (Tex.App.—Houston [14th Dist.] 1998, pet. granted); *Mata v. State*, 939 S.W.2d 719, 722 (Tex.App.—Waco 1997, no pet.). "In determining whether evidence has been presented which raises the issue of a defensive charge, we must consider *all* of the evidence presented at trial regardless of whether it is strong, weak, unimpeached,

or contradicted." *Frank,* 688 S.W.2d at 868. All of the evidence includes evidence produced by both the State and the defendant because the jury may accept or reject all or a part of any witness's testimony and choose to reject portions of testimony that are contradicted by other evidence. *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974).

Section 9.31 of the Texas Penal Code limits the right to use self-defense against a police officer who is attempting to effect an arrest. TEX. PENAL CODE ANN. § 9.31 (Vernon 1994 & Supp.1999). The use of force to resist an arrest is justified: (1) if, before the actor offers any resistance, the peace officer ... uses or attempts to use greater force than necessary to make the arrest or search; and (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's ... use or attempted use of greater force than necessary. *Id.* at § 9.31(c).

Five of the officers who had some involvement in Kemph's arrest testified on behalf of the State. Kemph, his girlfriend, and a waitress at the bar near the place where Kemph was arrested testified on Kemph's behalf. The following summarizes the testimony favorable to Kemph, taking into consideration the standard of review that requires the submission of the defensive issue if it is supported by *any* evidence, whether strong, weak, unimpeached, or contradicted. *See Alaniz v. State,* 865 S.W.2d 529, 530–31 (Tex.App.—Corpus Christi 1993, no pet.).

Kemph and his girlfriend both testified that they were sitting on a bench outside a restaurant/bar talking quietly. Officer Villanueva approached them and told Kemph to "get up." Kemph looked up at Officer Villanueva and asked: "What?" or "What for?" Officer Villanueva again commanded him to "Get up," reached down and pulled Kemph up, and slammed Kemph face forward into the brick sidewalk. Officer Villanueva was immediately joined by five other officers who assisted in pinning Kemph to the ground by choking him, poking his eyes, grabbing his ears, and placing their knees in his back. Kemph testified that he was struggling against the officers in order to get his face off the ground; however, he denied that he was attempting to bite or hit the officers. Kemph's girlfriend also stated that Kemph did not ever try to bite or kick the officers. The officers' version of the events differs drastically from this testimony. The officers testified that Kemph offered resistance before Officer Villanueva reacted and that Kemph did attempt to bite and kick them during the struggle.

The State asserts that Kemph was not entitled to the multiple assailant defensive instruction because Kemph repudiated the very actions the defense is meant to justify, that is attempting to kick and bite the officers. In support of this assertion, the State primarily relies on *Johnson v. State,* 715 S.W.2d 402, 405–06 (Tex.App.—Houston [1st Dist.] 1986), *pet ref'd,* 738 S.W.2d 287 (Tex.Crim.App.1987). In *Johnson,* the defendant was convicted of murdering his former wife. 715 S.W.2d at 403. The defendant testified and stated that he never shot his wife. *Id.* at 404. In affirming the trial court's refusal to submit a self-defense instruction, the court of appeals noted that the defendant's defensive theory did not seek to justify his participation in the offense; "it denied *any* participation." *Id.* at 406 (emphasis in the original); *see also McGarity v. State,* 5 S.W.3d 223, 227 (Tex.App.—San Antonio 1999, no pet.) (defensive instruction not required where defendant did not admit to defense).

As Kemph notes in his reply brief, the facts in the instant case are distinguishable from those in *Johnson.* This is not a situation in which Kemph denied *any* participation. In this case, Kemph admits that he was using force by struggling with the officers; he simply denies that he used the type of force in his struggle alleged by the State. Therefore, we conclude that Kemph did not repudiate the actions his defense was meant to justify. The jury

could have accepted Kemph's testimony that he struggled and the officer's testimony that he attempted to bite and kick them. The jury also could have accepted the testimony of Kemph, his girlfriend and the waitress that the police officers slammed Kemph to the ground before Kemph offered any resistance, and that Kemph believed his struggles were necessary to protect himself against the officers' use of greater force than necessary. The evidence, therefore, supported the submission of a multiple assailant self-defense instruction, and the trial court erred in denying Kemph's request.

▮▮▮ Although the trial court erred in denying the requested instruction, such error will only result in reversal if it caused some harm to Kemph. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Lerma v. State,* 807 S.W.2d 599, 601 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). The actual degree of harm must be determined by reviewing the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

The jury charge contained the following instruction on self-defense:

> If you find from the evidence beyond a reasonable doubt, that before the defendant, Peter Kemph, offered any force, Officer Villanueva used or attempted to use greater force that necessary to effect the arrest, and you further find from the evidence that the defendant, Peter Kemph, reasonably believed his actions were immediately necessary to protect himself against Officer Villanueva's use or attempted use of greater force than necessary, or if you have a

reasonable doubt thereof, you are instructed that you must find the defendant not guilty.

The State asserts that any error in failing to submit the multiple assailant instruction was harmless because all of the evidence suggested that Officer Villanueva was the lead officer in the encounter with Kemph, and there is no reason to believe the jury would have considered his actions separately from the other officers. We disagree. The jury had a very good reason to consider Officer Villanueva's actions separate from the other officers—they were instructed to do so.

In the general instructions, the justification of Kemph's actions was defined in terms of force against a single peace officer. In the application paragraph, the jury was instructed only to consider the actions of Officer Villanueva. Since we presume the jury followed these instructions, we must presume they only considered Officer Villanueva's actions in considering the defensive issue. While the jury might have concluded that Kemph could not reasonably have believed that he needed to use force against Officer Villanueva individually, the jury might have concluded that such a belief was reasonable when faced with the actions of the six officers combined.[1] Although the jury heard evidence and argument regarding the actions of all of the officers, they were instructed to consider only the actions of Officer Villanueva. We believe this amounts to "some harm" and sustain Kemph's first point of error. *See Dickey v. State,* 979 S.W.2d at 828 (finding failure to instruct on multiple assailants harmful despite instruction on self-defense against single assailant); *Lerma v. State,* 807 S.W.2d at 601–02 (same).

---

1. We note that the jury could have disbelieved the testimony offered by the defense witnesses that Kemph did not offer any resistance before the officers used force against him, which is relevant to the first prong of the defense. However, whether Kemph offered resistance was a contested issue, as was Kemph's belief with regard to whether force was necessary, which is the second prong of the defense. Without proper instructions, we cannot conclude that the failure to properly instruct the jury with regard to the contested issue presented under the second prong of the defense was harmless.

As we are sustaining Kemph's first point of error, we do not reach the remaining two points of error. However, we observe that limiting Kemph to twenty minutes for voir dire given the legitimate questions that Kemph's counsel wanted to ask might not have passed the abuse of discretion standard had we considered the issue. *See, e.g., Morris v. State*, 1 S.W.3d 336 (Tex.App.—Austin 1999, no pet. h.) (reversing trial court's judgment based on unreasonable limitations placed on voir dire); *Clemments v. State*, 940 S.W.2d 207 (Tex.App.—San Antonio 1996, pet. ref'd) (same). Likewise, only allowing Kemph's counsel six minutes to summarize the testimony of eight witnesses and apply the law in the case to the facts might also not pass an abuse of discretion test. We have sympathy for a hard working trial judge who is trying to move the docket, but there is a limit on how quickly a case can be ordered to proceed without infringing on a defendant's constitutional right to a fair trial.

### CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial.

Concurring opinion by: ALMA L. LÓPEZ, Justice.

Concurring opinion by: ALMA L. LÓPEZ, Justice.

I reluctantly concur with the majority opinion regarding the requirement for a jury instruction on the issue of self-defense against multiple assailants. The state of the law in this area clearly requires this court to reverse the trial court's judgment; however, on these facts the reversal seems to unfairly prejudice law enforcement officers who have sworn to uphold the laws of this state and who are routinely thrust into life-threatening situations to protect the public.