Affirmed and Opinion filed June 26, 2003









Affirmed and Opinion filed June 26, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00551-CR

____________

 

MICHAEL
WAYNE JACKSON, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
179th District Court

Harris County, Texas

Trial Court Cause
No. 885,397

 



 

O P I N I O N

Appellant, Michael Wayne
Jackson, was charged by indictment with aggravated assault with a deadly
weapon, enhanced by two prior felony convictions.  See Tex.
Pen. Code Ann. ''
22.01(a)(1), .02(a)(2) (Vernon 2003); see also Tex. Pen. Code Ann. ' 12.42(d) (Vernon 2003).  A jury found appellant guilty as charged in
the indictment, found the two enhancements true, and assessed appellant=s punishment at
twenty-five years confinement.  The trial
court sentenced appellant accordingly.








In point of error one,
appellant challenges the trial court=s
denial of his motion to dismiss; in point two, the trial court=s denial of his request
for a self-defense instruction; in points three through five, the admission of
hearsay statements; and in points six and seven, the legal and factual
sufficiency of the evidence.  We affirm.




FACTUAL AND PROCEDURAL
BACKGROUND

Houston Police Department
patrol officer David Curry was dispatched to an assault at an apartment complex
on March 11, 2001 at 7:30 a.m.  When he
arrived, he saw emergency personnel carrying the complainant, Mary Roberson,
down the apartment stairs.  Curry saw
Roberson had wounds to her face and was crying. 
She appeared frightened and excited, and was worried about her children.

Curry learned the assault
had occurred about fifteen to twenty minutes before Curry=s arrival at the scene.[1]  Roberson told Curry her boyfriend had
assaulted her.  She also told Curry she
had moved to a new apartment in an effort to get away from her boyfriend, but
he came to the apartment and asked her to give him a ride to work in the U-Haul
vehicle she had rented for the move. 
Roberson initially stalled by saying she could not find her identification
or was waiting for someone.  She
eventually refused to take appellant. 
Roberson told Curry appellant then picked up a 30 to 35 pound end table
and threw it at Roberson.  They struggled
over the table, and Roberson fell onto the sofa.  Roberson tried to hide her face under the
pillows, but, according to what Roberson told Curry, appellant repeatedly
struck her with the end table.








After Curry finished
talking to Roberson, he spoke with Roberson=s
daughter Shacota, who was standing by her mother near the ambulance.  According to Curry, Shacota was upset and crying
because her mother was being taken away in the ambulance and had been
assaulted.  Shacota also appeared
excited.  Shacota said she saw appellant
strike her mother with the table. 
Appellant also struck Shacota with the table.  Because they were in the process of moving,
they did not have a telephone in the apartment, so Shacota told her brother to
leave, find a telephone, and call the police. 
Shacota also told Curry they had moved to get away from appellant.

Within five minutes of
Curry=s arrival and fifteen
minutes from the time of the assault, Curry also spoke with Shaneque, Roberson=s niece.  According to Curry, Shaneque appeared
excited, fearful, and angry.  Shaneque
stated she saw appellant strike Roberson with the end table.  Shaneque said she grabbed an iron and hit
appellant in the head to prevent him from striking Roberson any more.  Shaneque stated when she tried to intervene, appellant hit her with the “night stand,” as
well.

Roberson was transported
to the hospital with fractures to her eye sockets and face and severe swelling
to her eyes, nose, and face.  Curry
testified he saw the table inside the apartment and believed it could cause serious
bodily injury or death if used as a weapon.

After obtaining the
information from the witnesses at the scene, Curry attempted to locate
appellant.  Officer Darrell Frank
accompanied Curry, and the two officers went to a nearby townhouse where one of
appellant=s
relatives lived.  A person at the
townhouse led Curry inside.  The person
also called for appellant to come downstairs. 
While Curry was inside the front part of the house, Frank went to the
back.  Curry heard Frank telling
appellant to “get down.”  Curry ran to
the back of the house where he saw appellant on a patio cover outside a second
story window.  The officers ordered
appellant to get down as appellant screamed profanities at the officers.  Frank described appellant=s demeanor as “very
hostile.” 








Appellant eventually
climbed back through the window.  Frank
stayed near the backyard while Curry went to the front of the house.  Curry told Frank over the radio that
appellant had run out the front door, and Curry was chasing appellant on
foot.  Frank initially joined the chase,
but eventually returned to get his patrol car. 
Curry chased appellant through two apartment complexes and over fences
before he apprehended him.  After Curry
captured appellant, Frank and Officer Richard Lowe assisted Curry in
handcuffing appellant and placing him in the patrol car.  Once appellant was in custody, the officers
noticed appellant had a cut on his head, a cut Curry believed was consistent
with what Shaneque had told Curry about hitting appellant with the iron.

Appellant testified at
trial, admitting he had been convicted of two felonies and had been arrested or
convicted for several criminal offenses. 
He stated he never hit Roberson with the table or any other object.  Instead, Shacota, Shaneque, and Roberson=s teenage son began
attacking appellant after appellant got into a verbal argument with
Roberson.  Appellant testified he never
hit Roberson, and Roberson never hit him. 
Although he did not see who was hitting whom, appellant knew someone hit
him and someone hit Roberson.  Appellant
claimed he never grabbed a table because everything was still packed.  He testified he fled to his aunt=s house to wait until
everything cooled down.  He said, if he had known Roberson=s
son had called the police, he would have left his aunt=s house because he was on
parole and did not want to go back to jail.

Jennifer Varela, a social
worker and expert in the psychological aspects of domestic violence, testified
for the defense and also in rebuttal for the State.  After observing appellant=s testimony, Varela
testified he exhibited the typical behavior pattern of a domestic
batterer.  Specifically, she stated the
fact appellant minimized his responsibility, used the passive voice,
characterized Roberson and the children as overreacting to the argument, and
fled with the intention of coming back when Roberson calmed down were common or
typical behavior patterns of people who commit family violence.  Varela testified she was under the impression
Roberson was not cooperating with the State in this prosecution.  Finally, Varela stated it was not uncommon
for victims of domestic abuse to refuse to cooperate because of financial reasons,
emotional attachments to the batterer, or fear.








DISCUSSION

Point of Error One:  Denial of Appellant=s Motion to
Dismiss

In point of error one,
appellant contends the trial court committed reversible error in denying his
motion to dismiss.  In the trial court,
appellant argued (1) there was insufficient evidence to continue prosecution of
the case and (2) the complaining witness requested dismissal.  In support of his motion, appellant submitted
an affidavit from the complainant stating (1) she did not wish the State to
continue prosecution, (2) she did not see who hit her, (3) she did not receive
injuries from appellant, and (4) after she returned from the hospital, she was
told appellant had not injured her.  On
appeal, the gravamen of appellant=s
argument is that, in light of the complainant=s
affidavit of non-prosecution, there was insufficient evidence to support a
determination of probable cause to indict.








Generally, a trial court
does not have the power to dismiss a case unless the prosecutor requests
dismissal.  Ex parte Seidel, 39
S.W.3d 221, 223 (Tex. Crim. App. 2001) (citing State v. Johnson, 821
S.W.2d 609, 613 (Tex. Crim. App. 1991)). 
In addition, “[t]his court cannot review the sufficiency of the evidence
to support an indictment, or question whether the grand jury had probable cause
to indict.”  Brochu
v. State, 927 S.W.2d 745, 749 (Tex. App.CHouston [14th Dist.]
1996, pet. ref’d).  Finally, we note that
a criminal conviction, which requires proof beyond a reasonable doubt, may rest
on hearsay despite the lack of the complainant=s
testimony or even the complainant=s
recantation.  See, e.g.,  Salley
v. State, 25 S.W.3d 878, 881 (Tex. App.CHouston
[14th Dist.] 2000, no pet.) (holding evidence legally sufficient although
largely presented through responding officer when complainant testified she
could not remember any of the events leading to husband=s arrest); Peters v.
State, 997 S.W.2d 377, 382B83
(Tex. App.CBeaumont
1999, no pet.) (holding evidence legally sufficient to establish sexual assault
despite being based largely on unobjected to hearsay in face of complainant=s recantation); Tejeda v. State, 905 S.W.2d 313, 318 (Tex.
App.CSan
Antonio 1995, pet. ref=d)
(holding hearsay evidence of responding officer and physical evidence of cuts
and bruises legally sufficient despite complaint=s
having claimed spousal privilege not to testify against husband).

We overrule appellant=s point of error one.

Point of Error Two:
Denial of Appellant=s
Request for an Instruction on Self-Defense

In his second point of error, appellant contends the trial
court committed reversible error in denying his request for an instruction on
self-defense.  A defendant is entitled to
an instruction on any properly requested defensive issue raised by the evidence,
regardless of whether the evidence is weak or strong, unimpeached or
contradicted, or credible or not credible. 
Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim.
App. 1999); Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App.1996).  Thus, we must decide whether the evidence,
viewed in the light most favorable to appellant, is sufficient to raise the
issue of self‑defense.  See
Lavern v. State, 48 S.W.3d 356, 360 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (en banc).  This evidence includes that adduced by the
State as well as the defendant.  See Kemph v. State, 12 S.W.3d 530, 532 (Tex. App.CSan Antonio 1999, pet. ref=d) (citing Thompson v. State,
521 S.W.2d 621, 624 (Tex. Crim. App. 1974)).








Texas Penal Code section 9.31(a) provides “a person is
justified in using force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself
against the other’s use or attempted use of unlawful force.”  Tex. Pen. Code Ann. ' 9.31(a) (Vernon 2003).  To be entitled to an instruction on self‑defense,
appellant was required first to admit the conduct charged in the indictment and
then to offer evidence justifying the conduct. See Anderson v. State, 11
S.W.3d 369, 372 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d); see also Young v. State,
991 S.W.2d 835, 839 (Tex. Crim. App. 1999). 
Admitting the conduct, however, does not necessarily mean admitting the
commission of every statutory element of the offense.  East v. State, 76 S.W.3d 736, 738
(Tex. App.CWaco 2002, no pet.); see, e.g.,
Martinez v. State, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989) (stating
denial of intent to kill did not preclude self-defense when defendant admitted
pulling out gun, firing shot into air, and having finger on trigger when fatal
shot fired).  Instead, a defendant can
sufficiently admit the conduct alleged and justify a defensive
instruction.  Torres v. State, 7
S.W.3d 712, 715 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d). 
In addition, a defendant=s repudiation of the specific actions his defense is meant to
justify will not necessarily preclude a self-defense instruction when a
defendant admits to some participation in the offense.  See Kemph,
12 S.W.3d at 532B33 (holding, in resisting-arrest case, defendant was entitled
to self-defense instruction when he admitted to struggling against officers but
denied attempting to bite or kick them, but officers testified defendant did
attempt to bite and kick them).

In the present case, appellant admitted only to grabbing
Roberson=s arm (an act, which according to his
testimony, preceded the act giving rise to the assault charge) and to going over
to her, “steady going like trying to get to her.”  Thus, the present case is distinguishable
from cases like Torres, in which this court held the defendant, on trial
for assault, had admitted his conduct sufficiently to warrant a self-defense
instruction when he admitted to grabbing his wife by her hair, possibly hitting
her in the face when he grabbed the hair at her forehead, struggling with her,
and pushing her away.  Torres, 7 S.W.3d at 716.  Cf.
Withers v. State, 994 S.W.2d 742, 745B746 (Tex. App.CCorpus Christi 1999, pet. ref=d) (holding self-defense instruction
warranted when teacher accused of injury to a child admitted a “physical
contest” with a special needs student, but denied intent to injure the child); Holloman
v. State, 948 S.W.2d 349, 352 (Tex. App.CAmarillo 1997, no pet.) (holding defendant sufficiently admitted conduct when he
conceded he struck his wife, tussled with her, fell on her, and possibly hit
her with his legs after falling).








Roberson, the complainant in the present case, however told
the investigating officer that, after she and appellant struggled over an end
table, she fell onto the sofa and appellant then struck Roberson repeatedly
with the table.  Two other witnesses also
reported appellant struck Roberson with the end table.  Under the reasoning of Kemph,
then, appellant=s testimony combined with the reports of the other witnesses
might constitute sufficient “admission” of the assaultive conduct.

Nevertheless, there is one controlling fact that
distinguishes this case from Kemph  and further
distinguishes it from Torres, Withers, and Holloman.  Appellant testified Roberson did not hit
him.  And there is no evidence she hit
appellant or that she even threatened him. 
In short, viewing the evidence in the light most favorable to appellant,
we are left with a picture in which appellant assaulted a person who never used
or attempted to use unlawful force against him. 
Cf. Tex. Pen. Code Ann. ' 9.31(a) (Vernon 2003).

We overrule appellant=s point of error two.

Points of Error Three
through Five: Admission of Hearsay Declarations

In point of error three,
appellant challenges the admission of Roberson=s
statements to Curry; in point of error four, the admission of Shaneque=s statements to Curry;
and in point of error five, the admission of Shacota=s statements to Curry.  Over appellant=s
hearsay objections, the trial court admitted the statements under the excited
utterance exception to the rule against hearsay.[2]













The excited utterance
exception to the hearsay rule provides that “a statement relating to a
startling event or condition made while the declarant was under the stress of
excitement caused by the event or condition” is not excluded by the hearsay
rule.  Tex. R. Evid.  803(2).  For a statement to qualify as an excited utterance under rule
803(2), the following criteria must be met: 
(1) the statement must be the product of a startling event; (2) the
declarant must have been dominated by the emotion, excitement, fear, or pain of
the event; and (3) the statement must have related to the circumstances of the
startling event.  McFarland v. State,
845 S.W.2d 824, 846 (Tex. Crim. App. App. 1992), overruled on other grounds
by Bingham v. State, 915 S.W.2d 9, 14 (Tex. Crim. App.1994).  A court may also consider how much time
elapsed between the startling event and the statement. See Wood v. State,
18 S.W.3d 642, 652 (Tex. Crim. App. 2000) (determining a fourteen‑hour
delay is excessive for an excited utterance exception); Ross v. State,
879 S.W.2d 248, 249 (Tex. App.CHouston [14th Dist.] 1994, pet. ref=d) (holding that statement within
thirty to forty‑five minutes of an attack was an excited utterance).

The determination of the
admissibility of an out‑of‑court statement under an exception to
the hearsay rule is within the trial court=s
discretion. See Lawton v. State, 913 S.W.2d 542, 553
(Tex. Crim. App.1995).  Absent a clear
abuse of discretion, this court will not overturn the trial court=s determination. See
Montgomery v. State, 810 S.W.2d 372, 390B91
(Tex. Crim. App.1990).

Curry testified he first
saw Roberson as the emergency personnel were bringing her down from her
apartment.  Roberson was crying, very
upset, and worried about her children. 
She had physical wounds to her face, and stated her boyfriend had
assaulted her.  Curry saw Roberson in
this condition about fifteen or twenty minutes, maybe less, after the assault
occurred.

Curry spoke with Shacota
immediately after he finished speaking to Roberson.  Shacota was “very upset and crying because
her mother was being taken away in the ambulance and had been assaulted.”  Shacota saw appellant assault Roberson.

Curry spoke with Shaneque
within five minutes of his arrival at the scene, about fifteen minutes from the
time of the assault.  Shaneque appeared
excited, fearful, and angry.  She had
seen appellant hit Roberson with the table, and appellant had then hit
Shaneque, too.

All three statements meet
the criteria for admission as excited utterances.  The trial court did not abuse its discretion
in admitting Roberson=s,
Shacota=s, and Shaneque=s statements to Curry.








We overrule appellant=s points of error three,
four, and five.

Points of Error Six and
Seven:  the Legal and Factual Sufficiency
of the Evidence

In point of error six,
appellant challenges the legal sufficiency of the evidence to support his
conviction of aggravated assault with a deadly weapon; in point of error seven,
the factual sufficiency of the evidence. 
He does not contend the evidence is insufficient on  any particular element of the offense;
instead, the gravamen of his argument in both points of error is that the
evidence is insufficient because “the declarations made by the complainant and
her family members . . . were not credible” when the declarants did not appear
at trial and their absence was unexplained.

When reviewing the legal
sufficiency of the evidence, this court must view the evidence in the light
most favorable to the prosecution and determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Garrett v.
State, 851 S.W.2d 853, 857 (Tex. Crim. App. 1993).  This standard of review applies to cases
involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).








When conducting a factual
sufficiency review, we view the evidence in a neutral light favoring neither
party.  Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  When a defendant who has presented evidence
challenges the factual sufficiency of the elements of an offense, the correct
standard we must follow requires us to determine whether (1) the proof of guilt
is so obviously weak as to undermine confidence in the jury=s verdict, or (2) the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.  Johnson, 23
S.W.3d at 11; see also Zuliani v. State, 97
S.W.3d 589, 593B94
(Tex. Crim. App. 2003).  We must accord
due deference to the fact finder=s
determinations, particularly those determinations concerning the weight and
credibility of the evidence.  Johnson,
23 S.W.3d  at
9.  The verdict should be set aside only
in order to prevent a clearly wrong and unjust result.  See Jones v. State, 944
S.W.2d 642, 648 (Tex. Crim. App. 1996).

As discussed under points
of error three through five, the declarations of the complainant and her family
members were admissible under the hearsay exception for excited
utterances.  This exception is founded on
the belief that statements made as a result of a startling event or condition
are involuntary and do not allow the declarant an adequate opportunity to
fabricate, thus ensuring enough trustworthiness to fall outside the rule
excluding hearsay.  See Couchman v. State, 3 S.W.3d 155, 159 (Tex. App.CFort
Worth 1999, pet. ref=d).  Moreover, as we stated in analyzing point of
error one, a criminal conviction may rest on hearsay despite the lack of the
complainant=s
testimony or even the complainant=s
recantation.  See, e.g.,  Salley, 25
S.W.3d at 881 (holding evidence legally sufficient although largely presented
through responding officer when complainant testified she could not remember
any of the events leading to husband=s
arrest); Peters, 997 S.W.2d at 382B83
(holding evidence legally sufficient to establish sexual assault despite being
based largely on unobjected to hearsay in face of complainant=s recantation); Tejeda, 905 S.W.2d at 318 (holding hearsay evidence
of responding officer and physical evidence of cuts and bruises legally
sufficient despite complaint=s
having claimed spousal privilege not to testify against husband).

In the present case, the
State established the elements of the offense not only through Roberson=s declaration to Curry,
but through the declarations of two other eye-witnesses, as well.  In addition, the State introduced Roberson=s medical records with an
EMS report containing the following notation: “Pt stated that her boyfriend hit
her w/a table multiple times.”  Viewed in
the light most favorable to the prosecution, the evidence was legally
sufficient to support appellant=s
conviction.








Additionally, when we
view the evidence in a neutral light favoring neither party, we cannot conclude
either that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s verdict, or that the proof of guilt is greatly outweighed by
contrary proof.  The declarations made
immediately after the assault were consistent with each other and with the
physical evidence of Roberson=s
and appellant=s
injuries.  Appellant=s flight immediately
after the assault and his further attempts to evade the police constitute
circumstantial evidence of his guilt.  See Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim.
App.1979) (holding flight alone is insufficient to support guilty verdict, but
is circumstance raising inference of guilt).  Contrasted with the State=s evidence is appellant=s testimony that he never
hit Roberson.  Applying both Johnson/Zuliani prongs, we conclude neither requires reversal.

Viewed in a neutral
light, the evidence is factually sufficient to support appellant=s conviction.

We overrule appellant=s points of error six and
seven.

We affirm the conviction.

 

/s/        John S. Anderson

Justice

 




Judgment rendered and Opinion filed June 26, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.

Publish C Tex. R. App. P. 47.2(b).











[1]  At the beginning
of its case in chief, the State called Mary Roberson (the complainant),
Shaneque Roberson, and Shacota Roberson as witnesses.  None answered.  The State then introduced all the facts
regarding the assault through hearsay declarations made to the investigating
officer by the three eye-witnesses to the assault.





[2]  The State does
not argue appellant failed to preserve error in relation to any of the
statements.  Error may not be predicated
on a ruling admitting evidence unless “a timely
objection or motion to strike appears of record, stating the specific ground of
objection, if the specific ground was not apparent from the context.”  Tex.
R. Evid. 103(a)(1).  Appellant lodged only the following
objections to Shaneque=s statement:

 

Q.         [By
the Prosecutor] 
When you talked to Shaneque, did she make any statements to you?

MR. MUHAMMAD [Defense Counsel]: 
Objection, calls for hearsay.

THE
COURT:  The question was did she, not
what were they.  The objection is
overruled.

Q.         [By
the Prosecutor]  Did she make any statements
to you?

A.         Yes,
sir, she did.

Q.         And
what was B what was Shaneque’s
emotional state at that time?

MR. MUHAMMAD:  Objection,
hearsay, Judge. 

THE COURT:  Overruled.

MR.
MUHAMMAD:  Judge, the statements could be
made in more than an oral presentation.

THE
COURT:  The question: What was Shaneque=s emotional state at that time.

MR.
MUHAMMAD:  And Judge, it is asked purely
for the prejudicial value.  The jury will
think her emotional reaction were speaking.

THE
COURT:  Well, I don=t know what the jury is going to think, but your
objection is overruled.

THE
WITNESS:  She was very upset, too,
because she had been assaulted by B

MR. MUHAMMAD:  Objection,
assuming facts not in evidence.

THE COURT:  Overruled.

THE WITNESS:  B because she had been assaulted by the defendant.

Q.         So if
you could, tell us what Shaneque told you?

MR.
MUHAMMAD:  We object to hearsay.  We first heard of this alleged assault and we=re totally surprised by it.

THE COURT:  Well, your objection
is overruled.

MR.
MUHAMMAD:  In other words, Judge, anybody
they want him to have assaulted B

THE
COURT:  Listen to me.  I can only go by the question that’s asked,
and I can go by the objection that=s
made.  The objection that was made to the
question that was asked is overruled.

MR.
MUHAMMAD:  There=s no such mention of any assault of anybody but B 

THE COURT:  Excuse me.  Your objection is overruled.

Because we conclude the trial court did not abuse its
discretion in admitting Shaneque’s declaration, we
need not address whether these objections adequately preserved the asserted
error.