

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00072-CR
_____

COLBY BRYANT FLOWERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 29537

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

After a jury found Colby Bryant Flowers guilty of three counts of aggravated assault with a deadly weapon, he was sentenced to twenty years' confinement in prison on each count. In the same proceeding, Flowers pled guilty to two counts of unlawful possession of a firearm and was sentenced to ten years in prison on each count. The trial court ordered the sentences to run concurrently. Flowers appeals, arguing that (1) the trial court erred when it failed to include a self-defense instruction in its jury charge, (2) his two convictions for unlawful possession of a firearm violated the multiple punishment prohibition, and (3) the trial court erred when it failed to admit evidence relating to his claim of self-defense. For the reasons below, we affirm the trial court's judgment.

## I.      Background

### A.      The Initial Confrontation

On August 30, 2021, Kenneth Crittenden and his former girlfriend, Lindsey Wilson, were involved in a "text spat." Crittenden is the father of Summer Whitworth's child, and at the time of the incident at issue, Crittenden and Whitworth had a "relationship," but they were not "together." At some point during Wilson's and Crittenden's texting conversation, they began to argue about Whitworth.

According to Crittenden, he began receiving text messages the next day from Flowers, who was then in a dating relationship with Wilson. Later that day, while riding in a vehicle with

Whitworth and Raven Jordan,[1] Crittenden saw Flowers driving in the opposite direction, and he directed Jordan to follow Flowers. Accounts vary as to what happened next.

According to Flowers,

> Then I got to the stop sign, sir, and as I began turning -- well, as the text messages show when we were on the street actually that's when the text message of [Crittenden] telling me to stop comes into play. Then as I got to the stop sign I began turning left and when I looked back they were still coming towards me so that's when I fired out the window in order to get them to quit chasing me.

Flowers said that he was afraid they were going to run into him. When asked if he shot *at* them, Flowers responded, "No, sir, by all means, no." Instead, he said that he fired into the air.[2]

At trial, after Flowers was shown a photograph that depicted him holding an assault rifle, Flowers stated that he had "sent [Crittenden] the picture [by text] . . . when [he] got home after they claimed [he] had shot at them." Flowers said that he believed Crittenden had given him the option of physically fighting or "having a shootout" during their earlier texting conversation. According to Flowers, he believed that Crittenden had a weapon.

### B. The Second Incident

About an hour after the first incident, Chris Mayfield, a detective with the Paris Police Department (PPD), responded to a disturbance at a home on the west side of Paris. While processing the scene, Flowers came out of the residence several times to speak to the responding officers. As Mayfield approached the house, he smelled the odor of marihuana "kind of emitting outside the residence." "[A]s the front door would open and close that odor would get

---

[1]Jordan was the driver of the vehicle.

[2]During an interview with law enforcement officers, Flowers admitted that he stuck his arm out of the window and started shooting the pistol up in the air, but he claimed he "did not aim at them." Flowers conceded that he shot eight times, stating, "That's how many bullets the gun holds."

considerably stronger." Based on the odor, another PPD officer, Sergeant Leigh Foreman, sought and obtained a search warrant that allowed officers to search the house and Flowers's vehicle.

Pursuant to the search warrant, Mayfield searched Flowers's bedroom in the house, finding, among other things, an insurance card, work shirts, and a prescription bottle, all containing Flowers's name. In addition, Mayfield located several empty plastic baggies that smelled of marihuana, a plastic baggie containing three rounds of 9 mm ammunition, and a Taurus G2 semi-automatic pistol that contained seven rounds of Hornady ammunition loaded in the magazine. Although Flowers shared the bedroom with his brother, those items were found on Flowers's side of the room and in furniture that he had been using.

A dark grey Hyundai that belonged to Flowers was parked in the driveway of the house. Police officers found an assault rifle, a magazine, and some ammunition in the vehicle. According to Mayfield, "[T]he rifle was loaded and ready for operation." After discovering the two weapons, Foreman arrested Flowers for two counts of unlawful possession of a firearm by a felon. Because Foreman had responded to the scene of the earlier shooting, described above, she was aware that the shooter had been driving a "silver car." Although she could not prove it at the time, Foreman was suspicious that Flowers had been involved in the earlier shooting because he drove a grey or silver vehicle and his name "had come up that morning already."

## II.	Discussion

### A.	The Trial Court's Jury Instructions Did Not Contain Error

In his first point of error, Flowers maintains that the trial court abused its discretion when it denied his request for a jury instruction on self-defense. We disagree.

During the charge conference on guilt/innocence, Flowers requested an instruction on self-defense, which the trial court denied. The State contends that Flowers failed to sufficiently admit to the charged offenses as required for the submission of a self-defense instruction; and, even if Flowers sufficiently admitted to the charged offenses, the evidence did not raise the issue of self-defense and/or the use of force was not justified by verbal provocation alone.

Section 9.02 of the Texas Penal Code states, "It is a defense to prosecution that the conduct in question is justified under this chapter." TEX. PENAL CODE ANN. § 9.02. Pursuant to Section 9.31, a person is justified in using force against another person when, and to the extent that person reasonably believes, the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a).

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak and regardless of what the trial court may think about the credibility of the defense.[3] *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Before a defendant is entitled to a self-defense instruction, however, there must be some evidence, when viewed in the light

---

[3]"[A] defendant need not testify in order to raise [a] . . . defense." *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.— San Antonio), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002). Defensive issues may be raised by the testimony of any witness, even those called by the State. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

most favorable to the defendant, that will support the claim. *Ferrel*, 55 S.W.3d at 591; *see Hill v. State*, 99 S.W.3d 248, 250 (Tex. App.—Fort Worth 2003, pet. ref'd).[4] "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

"Self-defense is a confession-and-avoidance defense requiring the defendant to admit his otherwise illegal conduct." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)). To be entitled to an instruction on self-defense, a defendant is required first to admit the conduct charged in the indictment and then to offer evidence justifying that conduct. *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999). A defendant cannot both invoke self-defense and flatly deny the charged conduct. *Juarez*, 308 S.W.3d at 406. "Admitting the conduct, however, does not necessarily mean admitting the commission of every statutory element of the offense." *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *East v. State*, 76 S.W.3d 736, 738 (Tex. App.—Waco 2002, no pet.)). That is, even if a defendant denies the specific allegations in the indictment, he or she is not necessarily precluded from raising defensive issues as long as he or she sufficiently admits conduct underlying the offense and provides evidence justifying a defensive instruction. *Id.* at 631–32 (citing *Kemph v. State*, 12 S.W.3d 530, 532 (Tex. App.—San Antonio 1999, pet. ref'd)).

---

[4]Likewise, "[a] trial court errs in denying a self-defense instruction if there is some evidence, from any source, that will support the elements of self-defense." *Fury v. State*, 607 S.W.3d 866, 875 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017)).

Flowers contends that he admitted to intentionally discharging his weapon at the scene. He goes on to state that "[t]he only small issue is that Flowers contends that he discharged the handgun into the air, while the State contends that Flowers discharged the handgun at the car containing Crittenden." Despite Flowers's assertion, that is not, in our opinion, a "small issue."

The State's indictment against Flowers alleged that, on or about August 31, 2021, he "did then and there *intentionally and knowingly threaten Kenneth Crittenden with imminent bodily injury by shooting at his vehicle*, and used or exhibited a deadly weapon, namely a firearm, during the commission of the assault."[5]   (Emphasis added).   According to Flowers's own testimony, he did not shoot at Jordan's vehicle. Instead, he admitted to shooting the weapon in the air in order to persuade Jordan to drive away or to prevent her from attempting to t-bone his vehicle. Likewise, Flowers did not admit to using the weapon to intentionally and knowingly threaten Crittenden with imminent bodily injury.[6]   Consequently, Flowers did not admit to, or even substantially admit to, the elements of aggravated assault with a deadly weapon as alleged in the indictment against him. In fact, he flatly denied the charged conduct. Consequently, the trial court did not err when it refused to grant his request for a jury instruction on self-defense.

We overrule Flowers's first point of error.

## B.      Flowers Waived His Claim of a Multiple Punishments Violation

The Double Jeopardy Clause in the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST.

---

[5]Counts II and III of the indictment contain the same allegations in relation to Jordan and Whitworth.

[6]The same is true for Jordan and Whitworth.

amend. V. "The clause protects against (1) a second prosecution for the same offense after [an] acquittal, (2) a second prosecution for the same offense after [a] conviction, and (3) multiple punishments for the same offense." *Ex parte Watkins*, 73 S.W.3d 264, 267 n.5 (Tex. Crim. App. 2002). "The Fifth Amendment's multiple punishments prohibition is violated when a defendant 'is convicted of more offenses than the legislature intended.'" *Saenz v. State*, 166 S.W.3d 270, 272 (Tex. Crim. App. 2005) (quoting *Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999)).

Here, count IV and count V of the State's indictment against Flowers were identical and read as follows:

> And it is further presented in and to said Court that the said Defendant in Lamar County, Texas, on or about August 31, 2021, did then and there, having been convicted of the felony offense of Burglary of a Habitation on October 17, 2016, in cause number 26946 in the 6th District Court of Lamar County, Texas, intentionally, knowingly, and recklessly possess a firearm before the fifth anniversary of the defendant's release from supervision under parole following conviction of the felony.

Without objecting to counts IV and V, Flowers pled guilty to both offenses.

In *Dorsey v. State*, after the trial court denied Dorsey's motion to suppress, Dorsey pled guilty to possession of a controlled substance with the intent to deliver and to two counts of unlawful possession of a firearm by a felon. The Houston Court of Appeals affirmed the trial court's judgment, finding in part, that Dorsey's two convictions for felon in possession of a firearm were wholly independent and that, therefore, double jeopardy did not attach. *See Dorsey v. State*, 623 S.W.3d 825, 836 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd).

In refusing Dorsey's petition for discretionary review, the Texas Court of Criminal

Appeals explained,

> Appellant pled guilty pursuant to a plea bargain and is therefore limited to appealing "matters which have been raised by written motion filed before trial." He did not raise a double jeopardy claim in the trial court and may not raise the issue for the first time on appeal. The court of appeals erred to address the merits of the claim.

*Dorsey v. State*, Nos. PD-901-20, PD-902-20, & PD-903-20, 2021 WL 1556100, at *1 (Tex.

Crim. App. Apr. 21, 2021) (per curiam) (order).

The same is true in this case. Before the commencement of trial, Flowers pled guilty to

both counts of unlawful possession of a firearm by a felon. In doing so, he conceded that he had

no complaint with the contents of the State's indictment, and he admitted to the offenses as

alleged in that indictment. As in *Dorsey*, Flowers failed to raise any perceived error with the

trial court.[7] As a result, we cannot address the merits of his claim.

We overrule his second point of error.

### C. The Trial Court Did Not Err When It Refused to Admit Evidence of Flowers's Self-Defense Theory

In support of a self-defense claim, Flowers contends that the trial court erred when it

refused to admit evidence that Crittenden "shot a firearm at Flowers" shortly after the occurrence

of the incident at issue.

---

[7]A defendant has the burden to "preserve, in some fashion . . . a double jeopardy objection" at trial. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (en banc). However, a double jeopardy claim may be raised for the first time on appeal when (1) a "violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). That is not the case here.

Before the commencement of trial, the State filed a motion in limine, stating that, about an hour after the incident at issue, Crittenden was "suspected of shooting at a house occupied by Mr. Flowers and family members of Mr. Flowers." The State asked the trial court to order the parties to refrain from making "[a]ny reference to Kenneth Crittenden being a suspect in an aggravated assault." The trial court granted the State's motion.

Flowers made an offer of proof at trial in which Mayfield testified that he had been dispatched to Flowers's grandparents' home in regard to a shooting that had occurred about an hour after the shooting took place near the park. According to Mayfield, a vehicle, reportedly containing Jordan, Crittenden, and Whitworth, drove past Flowers's grandparents' home, while someone in the vehicle fired a weapon at the house. Later, Crittenden informed the police that he had been the shooter. According to Flowers, "even though the incident occurred after the incident forming the basis of this case, that evidence was relevant of the level of conflict between [Crittenden] and Flowers, [Crittenden]'s access [to] and possession of a firearm, and his willingness to use a firearm."

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105

S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). "Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense." *Id.* "The burden of persuasion is not one that requires the production of evidence[;] rather[,] . . . the State [need only] prove its case beyond a reasonable doubt." *Id.* "When a jury finds the defendant guilty, there is an implicit finding against the defensive theory." *Id.*

Citing *Broussard v. State*, 809 S.W.2d 556, 559 (Tex. App.—Dallas 1991, pet. ref'd) Flowers correctly points out that "the defendant's reasonable apprehension of danger must be as it appeared at the time of the action." Here, Crittenden shot at Flowers's grandparents' house an hour after Flowers shot at Jordan's vehicle. To support a claim of self-defense, Flowers was required to show at least some evidence that it was necessary for him to shoot at Jordan's vehicle to protect himself from Crittenden's subsequent unlawful actions—an improbable, if not impossible, burden. Flowers's contention that Crittenden's actions during the second shooting somehow excused Flowers's actions in the first shooting does not amount to evidence of "justification" as defined by Section 9.31(a). Consequently, the trial court's decision to exclude

11

the complained-of evidence was not "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *See Flowers*, 438 S.W.3d at 103.

We overrule Flowers's third point of error.

## III. Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     November 29, 2022
Date Decided:        December 14, 2022

Do Not Publish