Chris HUBBARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–02–00188–CR.

Court of Appeals of Texas,
Texarkana.

Submitted March 4, 2004.

Decided April 2, 2004.

Rehearing Overruled April 27, 2004.

Adam O. Fellows, Texarkana, for appellant.

Candace Norris, Canyon, Mark D. Mullin, Huntsville, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Chris Hubbard awoke in his prison cell to find that his cellmate, Ronder Townsel, had pulled down Hubbard's boxer shorts, climbed on Hubbard's back, pressed his forearm to the back of Hubbard's neck to hold him down, and begun trying to rape him. During the ensuing struggle, Townsel was injured worse than Hubbard. In fact, Townsel's resulting broken ribs and sternum caused infection and ultimately death.[1] Charged with the capital murder of Townsel, Hubbard was denied a requested jury instruction on the issue of necessity, was convicted of the lesser-included offense of manslaughter, had his punishment enhanced, and was sentenced to life imprisonment and a $10,000.00 fine. On appeal, Hubbard asserts the trial court erred in refusing to give his requested jury instruction on necessity and in allowing inadmissible testimony. We reverse on the necessity issue and remand to the trial court for a new trial.

■ The Texas Penal Code makes necessity a defense only if (1) the defendant reasonably believed his or her conduct was immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the

1. Early in the evening of April 19, 2001, a correctional officer making his rounds at the Telford Unit of the Texas Department of Criminal Justice discovered Hubbard pacing the floor of his cell. When the officer paused to talk to Hubbard, he noticed Townsel had not touched his dinner and, on further investigation, was completely unresponsive. A nurse, one of the first responders to the scene, began to perform CPR on Townsel, even though she had no expectation he could be resuscitated; not only did the nurse find he lacked a pulse and was cold to the touch, but she also noted evidence of lividity and partial rigor mortis, indicating he had been dead for some time. An autopsy cited as the cause of death complications of blunt force trauma due to beating.

justification claimed for the conduct does not otherwise plainly appear. TEX. PEN. CODE ANN. § 9.22 (Vernon 2003). The rationale of the defense is that, even though a defendant may have violated the literal language of the criminal law by committing the act the crime requires, his or her act is justified because it avoided a harm of greater magnitude. *Arnwine v. State*, 20 S.W.3d 155, 159 (Tex.App.-Texarkana 2000, no pet.).

■■■ In keeping with this reasoning, a criminal defendant must not only admit having committed the action underlying the offense charged in order to properly raise the defense of necessity, but must also produce evidence at trial that the charged conduct was justified under the circumstances. *Id.* at 158. If a defendant thus raises the issue and properly requests an instruction, the trial court must include it in the jury charge; and, failing that, abuses its discretion. *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App.1997). This is true "regardless of whether [the evidence] is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief," *id.*, because the rule "is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence." *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App.1999) (citing *Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim.App.1987)).

Hubbard contends the trial court erred in denying his requested jury instruction on the issue of necessity. The State's response to this contention is twofold: (1) Hubbard failed to admit any offense as required for submission of a necessity defense; (2) even if Hubbard sufficiently admitted an offense, he failed to establish that his conduct was immediately necessary to prevent imminent harm. We address these arguments in turn.

*Must Defendant Admit Offense?*

■■ Certainly, before being allowed the necessity defense, a criminal defendant must admit having committed the offense with which he or she is charged; however, caselaw is unclear as to exactly what must be admitted. The Texas Court of Criminal Appeals has stated: "In order to raise necessity, a defendant admits violating the statute under which he is charged and then offers necessity as justification which weighs against imposing a criminal punishment for the act[ ] or acts which violated the statute." *Young v. State*, 991 S.W.2d 835, 838 (Tex.Crim.App.1999). On other occasions, however, the court has observed that such a sweeping premise—that all defenses require a defendant to admit having committed the charged offense—is incorrect.[2] *Willis v. State*, 790 S.W.2d 307, 313–14 (Tex.Crim.App.1990); *see Golden v. State*, 851 S.W.2d 291, 295 (Tex.Crim.App. 1993) (defendant not always required to admit offense to get defensive instruction).

2. Discussing mistake of fact in the context of a conviction for theft, for example, the court explained why this is so.

> [I]f a defendant testifies that he believed certain items he purchased to have been honestly obtained by the seller, he merely negates an element of the offense of theft by receiving property stolen by another (i.e., that he obtained the items *knowing* they were stolen). He does not negate the entire

offense (for he may still possess the items) but merely creates an issue of mistaken belief as to only the culpable mental state element of theft. In such circumstances, the defendant would be entitled to a defensive instruction of "mistake of fact" . . . and should not be required to admit the other elements of the crime.

*Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim.App.1990) (citation omitted).

The lower courts, too, have been inconsistent about whether a defendant must admit committing the offense before being entitled to a defensive instruction. While some courts have strictly held that a defendant must specifically admit the offense, including the culpable mental state the crime requires, *see, e.g., Allen v. State*, 971 S.W.2d 715, 720 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *Klein v. State*, 662 S.W.2d 166, 170 (Tex.App.-Corpus Christi 1983, no pet.); *see Andujo v. State*, No. 14–00–00693–CR, 2001 WL 777428, * 1 (Tex.App.-Houston [14th Dist.] July 12, 2001, pet. ref'd) (not designated for publication); *Robledo v. State*, No. 03–97–00094–CR, 1998 WL 872498, * 7 (Tex.App.-Austin Dec. 17, 1998, no pet.) (not designated for publication), other courts have been more willing to afford defendants defensive instructions when they have demonstrated some evidence on each element of the defense—even though a defendant may dispute certain elements of the crime as alleged in the indictment, *see, e.g., Jackson v. State*, 110 S.W.3d 626, 631–32 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *Withers v. State*, 994 S.W.2d 742, 745–46 (Tex.App.-Corpus Christi 1999, pet. ref'd); *Holloman v. State*, 948 S.W.2d 349, 351–52 (Tex.App.-Amarillo 1997, no writ).

Representative of the first category of cases, *McGarity v. State*, 5 S.W.3d 223 (Tex.App.-San Antonio 1999, no pet.), and *Aldrich v. State*, 53 S.W.3d 460 (Tex.App.-Dallas 2001), *aff'd*, 104 S.W.3d 890 (Tex. Crim.App.2003), strictly adhere to the principle that a defendant must admit all the elements of the offense charged. In *McGarity*, the Fourth Court of Appeals emphasized that "one cannot establish that an act is justified without first identifying, or admitting to the commission of the act." *McGarity*, 5 S.W.3d at 227. Although the defendant admitted throwing the victim onto a bed, causing her physical injuries, because he never admitted to the act charged in the indictment—striking the victim in the face with his hand—the court held that the defendant failed to properly raise the defense of necessity. *Id.* In *Aldrich*, the Fifth Court of Appeals similarly determined the defendant failed to properly raise the issue of necessity when the defendant, charged with impersonating a public servant, admitted saying she was a peace officer, but denied ever telling anyone to "turn around and place their hands behind their back." *Aldrich*, 53 S.W.3d at 468. Because the indictment alleged the defendant impersonated a peace officer *by demanding an individual "turn around and be arrested,"* however, the court concluded she not only failed to admit the indictment's allegations, but specifically denied them. *Id.* (emphasis added).

If we were to adopt this reasoning, we would be forced to conclude that, because Hubbard's testimony falls short of admitting all the elements of the offense charged in the indictment, he is not entitled to a defensive instruction. The indictment in this case alleged Hubbard intentionally or knowingly caused Townsel's death by striking him with his hand (or some other object) or by kicking him with his foot. While Hubbard never admitted intentionally or knowingly—or even recklessly—causing Townsel's death, he did admit causing the injuries, which the medical examiner testified ultimately led to the infection that killed Townsel.

Hubbard testified Townsel jumped on his back as he slept, pulled down his pants, and attempted to rape him. After struggling to get Townsel off of his bunk, Hubbard testified he tackled Townsel, with both falling to the floor, and hit him repeatedly in the chest, causing fractures to

Townsel's sternum and to a number of his ribs.

Nevertheless, according to those cases in the first category discussed, because Hubbard never admitted intentionally or knowingly (as charged)—or recklessly (as needed for the lesser-included offense of manslaughter)—causing Townsel's death, he did not properly raise the issue of necessity, and the trial court correctly denied his requested instruction—despite the fact he admitted causing the injuries that resulted in Townsel's death by taking the physical actions alleged. *See Allen,* 971 S.W.2d at 720 (admitting offense includes admitting culpable mental state the crime requires). We find more convincing, and a better statement of the law, those cases in the second category, allowing a defensive instruction when the defendant has presented evidence on each of the elements of the statutory defense and admitted at least some participation in the action underlying the offense charged.

Citing *Willis* and *Golden,* the Seventh Court of Appeals held a defendant was entitled to a self-defense instruction even without admitting the particular physical act alleged in the charging instrument. *Holloman,* 948 S.W.2d at 352. The court reasoned that "[i]t would be nonsensical to prohibit the defendant from claiming self-defense" because, regardless of the manner in which it was used, he admitted using "force." *Id.* (citing TEX. PEN.CODE ANN. § 9.31(a) ("force" justified under certain circumstances)). "In other words, if evidence is presented which discloses that the defendant used force in repelling the attack of another ... there is no legitimate reason why he should be denied the defense simply because he refused to admit to using the type of force alleged by the State." *Holloman,* 948 S.W.2d at 352.

Agreeing with this reasoning, the Thirteenth Court of Appeals reversed a trial court for erroneously denying the defendant's requested jury instructions on similar grounds. *Withers,* 994 S.W.2d at 745–46. In *Withers,* the defendant testified that, when she attempted to break up a classroom argument, she became embroiled in a physical contest with a special education student. *Id.* She admitted that, when the student grabbed her blouse in such a way that it choked her, and then refused to let go, she used a technique she had been taught in her special education training, which resulted in the student releasing her and rolling face down on the floor. The defendant then exerted pressure on the student's back to keep him still while she caught her breath. *Id.* at 744. The State argued that, despite these admissions, the defendant was not entitled to her requested defensive instructions because she specifically denied the conduct for which she was indicted. *Id.* at 745–46. Applying the *Holloman* analysis, however, the court determined that she adequately admitted the conduct required to raise the defensive issues, not only of self-defense, but also of defense of a third person and necessity. *Id.* at 746.

■ We agree with the general rule that a defendant must admit the conduct charged in the indictment and then offer evidence justifying the conduct. *Young,* 991 S.W.2d at 839; *Anderson v. State,* 11 S.W.3d 369, 372 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). "Admitting the conduct, however, does not necessarily mean admitting the commission of every statutory element of the offense." *Jackson,* 110 S.W.3d at 631 (citing *East v. State,* 76 S.W.3d 736, 738 (Tex.App.-Waco 2002, no pet.)). That is, even if a defendant denies the specific allegations in the indictment,

he or she is not necessarily precluded from raising defensive issues as long as he or she sufficiently admits conduct underlying the offense and provides evidence justifying a defensive instruction. *Jackson,* 110 S.W.3d at 631–32 (citing *Kemph v. State,* 12 S.W.3d 530, 532 (Tex.App.-San Antonio 1999, pet. ref'd); *Torres v. State,* 7 S.W.3d 712, 715 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd)).

The record evidence already cited clearly establishes that, although Hubbard did not admit intentionally, knowingly, or recklessly causing Townsel's death, he did admit the conduct underlying the offense, that is, striking Townsel. We hold this admission sufficient to satisfy the admission element required to raise the issue of necessity.

*Was There Evidence of Immediate Necessity?*

■ The State further questions Hubbard's entitlement to a defensive instruction, arguing he failed to establish his conduct was immediately necessary to avoid imminent harm.

Comparing the situation Hubbard faced with the situation outlined in *Castaneda v. State,* 28 S.W.3d 216 (Tex.App.-El Paso 2000, pet. ref'd), the State urges this Court to find unreasonable as a matter of law Hubbard's belief that action was immediately necessary to avoid imminent harm because he had ample time to consider the law. We have previously stated that "a defendant's belief that conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as a matter of law if undisputed facts demonstrate a complete absence of immediate necessity or imminent harm." *Arnwine,* 20 S.W.3d

at 159 (citing *Brazelton v. State,* 947 S.W.2d 644, 648–49 (Tex.App.-Fort Worth 1997, no pet.)). Nevertheless, because the present case is distinguishable from cases like *Castaneda,* we are unable to state, as a matter of law, that Hubbard's belief was unreasonable.

Castaneda was convicted of manslaughter and of five counts of aggravated assault after firing several rifle rounds into a group of people, killing one. *Castaneda,* 28 S.W.3d at 219. The trouble began when he barged into his estranged girlfriend's apartment, broke up a party, followed the group outside, and provoked a "pushing match." *Id.* Castaneda testified that, before this encounter turned into a fistfight, he turned back toward the apartment and began walking up the stairs. As he did so, someone from the group punched Castaneda on the shoulder and back, and sprayed him in the face with some form of mace, pepper spray, or tear gas. *Id.* at 225. The court recounted what happened next, concluding Castaneda had ample time to consider the law before responding as he did.

> It is undisputed that no one followed Castaneda back to the apartment. Rather, he retreated alone, though perhaps panicked from the spray. Although no one had pursued him, he entered the bedroom, found the rifle, left the apartment, and descended the flight of stairs before firing into the night. This simply does not raise an issue on necessity.

*Id.*

Hubbard was faced with an entirely different scenario. According to his testimony, he had previously warded off one sexual assault by applying significant force on

Townsel.[3]  Thereafter, Townsel awakened him with his attempt to rape him.  Townsel held Hubbard down with his forearm and began sucking on his ear and trying to rape him before Hubbard elbowed him and head-butted him in the face.  Hubbard then tackled Townsel, and the two landed on the floor.  Hubbard and Townsel continued struggling with each other, until Hubbard managed to get Townsel on his back, to hit him in the face, and to bloody his nose.  Hubbard stopped fighting at this point and stood up, but Townsel came at him again.  The fight only ended after they had again fallen to the floor and wrestled for some time.

Seizing on Hubbard's testimony describing what happened directly after he head-butted Townsel to get him off of his bunk, the State maintains Hubbard had time for reflection before beating Townsel with such force he caused several fractures to Townsel's ribs—reportedly the cause of the infection that ultimately killed Townsel.  Hubbard said: "[Townsel] had got up, he was standing, just standing there with no clothes on.  I got up and just went at him."  Contrary to the State's position that this indicated Hubbard had become the aggressor, however, our review of the record suggests that these events took place within a very short time and that Townsel was not easily dismissed.  It is instructive that Townsel attacked Hubbard again even after Hubbard testified he had bloodied Townsel's nose, and possibly even after the ultimately lethal chest punches by Hubbard—after Hubbard started to walk away from the fight.  Under the circumstances, and considering that a defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge, *Pennington v. State*, 54 S.W.3d 852, 856 (Tex.App.-Fort Worth 2001, pet. ref'd), we cannot say Hubbard's belief that action was immediately necessary to avoid imminent harm was unreasonable.  He was locked in a cell, alone with his attacker, and, unlike Castaneda, had no place of safety into which he could retreat.  Following the formulation of the Texas Penal Code Section 9.22 requirements, we conclude Hubbard presented evidence (1) that he reasonably believed repeatedly hitting Townsel was immediately necessary to avoid being raped; (2) that the desirability and urgency of avoiding being raped clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be remedied by the laws proscribing assault; and (3) that there appears to be no legislative purpose to exclude the justification in this circumstance.  *See* Tex. Pen.Code Ann. § 9.22.  Thus, the jury should have been instructed on necessity.

*Conclusion*

Having determined that Hubbard presented evidence on each of the elements of the necessity defense and admitted the actions underlying the offense charged, we need not reach his second point of error alleging the trial court erred by allowing inadmissible testimony.  Because Hubbard was entitled to an instruction on the defense of necessity, we reverse the judgment of the trial court and remand for further proceedings.

---

3.  This previous force included repeatedly striking Townsel with a coaxial cable, which was unsuccessful in stopping Townsel's attack, and then hitting him in the face with a fist, breaking Townsel's jaw and stopping Townsel's advance.