In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00117-CR
______________________________


TYRELL DARNELL SMITH, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 04-0333X


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Tyrell Darnell Smith was convicted by a jury of assault against a public servant. See
Tex. Pen. Code Ann. Â§ 22.01(b)(1) (Vernon Supp. 2005). The jury assessed his
punishment at five years' imprisonment and recommended community supervision. The
trial court sentenced Smith to five years' imprisonment, but suspended imposition of
sentence and placed him on community supervision for a period of five years, and ordered
him to serve 180 days in the county jail as a condition of his supervision.


 Smith appeals,
asserting one point of error in which he contends the trial court erred by refusing to instruct
the jury on the issue of self-defense. Because we conclude the trial court's refusal was not
error, we affirm the judgment.
I.Â Â Â Â Â Â Â Â Factual and Procedural History
Â Â Â Â Â Â Â Â Â Â On October 14, 2004, John Wyatt, a jailer at the Harrison County Jail, was working
the day shift. Smith, incarcerated on burglary charges, requested a "med call sheet" which,
according to jail procedure, would have been filled out by Smith and taken to the on-duty
nurse by Wyatt. The nurse would then go see the inmate requesting medical attention. 
On this day, however, there was no nurse on duty to attend to Smith's medical concerns. 
Nonetheless, Wyatt took a "med call sheet" to Smith, who was apparently located on the
fourth floor of the building. According to Wyatt, he returned to Smith's cell several times,
but Smith had not completed the sheet. Wyatt observed Smith for some time, noticing
that, although Smith kept calling for medical attention, he was watching television and did
not appear to be in any physical distress. Wyatt directed Smith to complete the "med call
sheet" and told him the nurse working the next shift would see him. 
Â Â Â Â Â Â Â Â Â Â Shortly after Wyatt served the inmates their lunches on that day, Deputy Matthew
Hasler arrived at the fourth floor with some inmates who had been to court. Wyatt and
Hasler then began the process of returning these inmates to their respective cells. One
of these inmates was to be returned to Smith's cell. When Wyatt opened the cell door,
Smith handed him the "med call sheet," complained that he wanted out of the cell, and
then bolted out the cell door. Hasler apprehended, restrained, and returned Smith to the
cell. 
Â Â Â Â Â Â Â Â Â Â While Wyatt continued the process of situating the returning inmates, Smith
attempted to get out of the cell again. He was stopped, pushed into the cell, and fell to the
floor. When the officers tried to close the cell door, Smith, still lying on the floor, stuck his
legs out the door preventing the officers from closing it. Wyatt then entered the cell, lifted
Smith from the floor by Smith's shirt, and slid him about three feet farther into the cell. 
Wyatt testified this was the only time he touched Smith. 
Â Â Â Â Â Â Â Â Â Â As Wyatt turned to exit the cell, and as Hasler stood near the entrance of the cell,
Smith hit Wyatt "up side the head" from behind. The blow broke Wyatt's glasses, causing
the lens to slice his cheek, spun him around, and knocked him against the door. Hasler
entered the cell, put Smith to the floor, and placed handcuffs on him. Wyatt secured the
door. Smith was later taken to an isolation cell. Wyatt suffered injuries to his face and eye. 
Wyatt testified that he never struck Smith and that he never saw Hasler strike Smith during
the struggle. Hasler testified that Smith did not strike Hasler during the struggle but that
Smith did strike Wyatt with his fists. Hasler also testified Wyatt never struck Smith. 
Â Â Â Â Â Â Â Â Â Â Smith did not testify at trial. He called one witness to testify to a different version
of events. Landungeran Leary, an inmate from the group waiting to be escorted by Hasler
to the basement level, testified in Smith's defense. According to Leary, Smith went to
Wyatt complaining of "some problems" and wanting to be moved. He testified that,
although Smith was not acting in an aggressive manner, Wyatt called for Hasler's
assistance. He characterized Wyatt as "excited" and Hasler as "aggressive." He explained
that Hasler manhandled Smith out of the cell and into the hall. He testified Hasler
slammed Smith into the hallway wall and struck Smith as he was pinned against the wall. 
He testified Smith never threatened, cursed, or hit Hasler. He was clear in his testimony
that Smith never fought back. Leary further testified that, after Hasler and Wyatt put Smith
back in his cell, Hasler walked away and Leary then heard Wyatt "hollering saying that he
had hit him." Leary went to see what was happening. He saw Wyatt "just sitting there. He
had a cut. He was sitting there holding his glasses." Leary testified he then saw Hasler
grab Smith again, slam him against the wall, and then slam him to the floor and put his
knee in the back of Smith's neck. Smith was then placed in what Leary described as a
"separation cell."
Â Â Â Â Â Â Â Â Â Â Smith requested but was denied a jury charge on self-defense. 
II.Â Â Â Â Â Â Â Applicable Law
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Self-Defense
Â Â Â Â Â Â Â Â Â Â In general, a person is justified in using force against another person ''when and to
the degree'' the person ''reasonably believes the force is immediately necessary'' for
protection against that other person's use or attempted use of unlawful force. Tex. Pen.
Code Ann. Â§ 9.31(a) (Vernon 2003); see also Tex. Pen. Code Ann. Â§ 1.07(a)(42), (48)
(Vernon Supp. 2005) (defining ''reasonable belief'' and ''unlawful''). The actor is not
justified in using force if the actor is responding to mere verbal provocation, a search or
arrest by a peace officer, or force that the actor consented to or provoked, or if the actor
sought an explanation from or discussion with the other person concerning their differences
while the actor was unlawfully carrying a weapon. Tex. Pen. Code Ann. Â§ 9.31(b) (Vernon
2003).
Â Â Â Â Â Â Â Â Â Â B.Â Â Â Â Â Â Â Entitlement to Defensive Instruction
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 1.Â Â Â Â Â Â Â Admitting to Conduct
Â Â Â Â Â Â Â Â Â Â Generally, to be entitled to a defensive instruction, a defendant must admit the
conduct charged in the indictment and then offer evidence justifying the conduct. See
Young v. State, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999); Hubbard v. State, 133
S.W.3d 797, 799 (Tex. App.âTexarkana 2004, pet. ref'd). Admitting the conduct,
however, does not necessarily mean admitting the commission of every statutory element
of the offense. Jackson v. State, 110 S.W.3d 626, 631 (Tex. App.âHouston [14th Dist.]
2003, pet. ref'd). Instead, a defendant who denies the state's specific allegations may still
obtain a defensive instruction if he or she sufficiently admits the conduct underlying the
alleged offense. See Young, 991 S.W.2d at 838; Hubbard, 133 S.W.3d at 801â02;
Jackson, 110 S.W.3d at 631â32. 
Â Â Â Â Â Â Â Â Â Â When the defendant in Holloman admitted to the use of force, although not in the
exact form as alleged by the state, such an admission tracked the language of the Texas
Penal Code that states a person is justified in using "force" under certain circumstances. 
Holloman v. State, 948 S.W.2d 349, 352 (Tex. App.âAmarillo 1997, no pet.). In Holloman,
a husband who was charged with assaulting his wife claimed he acted in self-defense. Id.
at 351. He conceded striking his wife, "tussling" with her, falling on her, and possibly hitting
her with his legs after falling. Id. The Holloman court held that his testimony sufficiently
admitted the conduct alleged, although it was not an outright admission to assault and
concluded that this evidence, although possibly feeble, entitled Holloman to raise the issue
of self-defense. Id. at 352. 
Â Â Â Â Â Â Â Â Â Â When determining whether the evidence raised the defense of necessity, self-defense, and defense of another, the Corpus Christi court relied on Holloman to conclude,
"if evidence is presented which discloses that the defendant used force in repelling the
attack of another, . . . there is no legitimate reason why he [or she] should be denied the
defense simply because he [or she] refused to admit to using the type of force alleged by
the State." Withers v. State, 994 S.W.2d 742, 745 (Tex. App.âCorpus Christi 1999, pet.
ref'd). Defendant Withers admitted to having engaged in a physical altercation, but
contested certain allegations, denying, for instance, allegations that she pushed the
complainant to the floor and grabbed his neck. Id. at 746. The court concluded that
Withers had sufficiently admitted the conduct alleged so as to allow her to raise the issue
of justification and that the trial court's refusal to include defensive instructions was error. 
Id.; see also Kemph v. State, 12 S.W.3d 530, 532 (Tex. App.âSan Antonio 1999, pet.
ref'd) (holding, in resisting-arrest case, defendant was entitled to self-defense instruction
when he admitted to struggling against officers but denied, contrary to officers' testimony,
attempting to bite or kick them).
Â Â Â Â Â Â Â Â Â Â In Hubbard, the record established that, although Hubbard did not admit
intentionally, knowingly, or recklessly causing Townsel's death, he did admit the conduct
underlying the offense, that is, striking Townsel. Hubbard, 133 S.W.3d at 801. We held
this admission sufficient to satisfy the admission element required to raise the issue of the
related defense of necessity. Id. at 802. In contrast, an appellant was not entitled to a jury
instruction on the defense of necessity when he argued he did not commit the offense
because he did not have the requisite intent and did not perform the actions alleged. 
Young, 991 S.W.2d at 839.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 2.Â Â Â Â Â Â Â Issue Raised by the Evidence
Â Â Â Â Â Â Â Â Â Â A defendant is entitled to an instruction on the law of self-defense if there is some
evidence he or she intended to use force against another and did use force, but did so only
because he or she reasonably believed it was necessary to prevent the other's use of
unlawful force. Ex parte Nailor, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004). A defendant
is entitled to an instruction on self-defense if the issue is raised by the evidence regardless
of whether such evidence is strong, feeble, impeached, or contradicted, and even if in the
trial court's opinion the testimony is not entitled to belief. Ferrel v. State, 55 S.W.3d 586,
591 (Tex. Crim. App. 2001). 
Â Â Â Â Â Â Â Â Â Â However, if the evidence, viewed in the light most favorable to the defendant, does
not raise the issue of self-defense, the defendant is not entitled to an instruction on the
issue. Id. If the record does not reflect any evidence of an appellant's state of mind or
observable manifestations of the appellant's state of mind, then the appellant is not entitled
to a jury instruction on the issue of self-defense. Reed v. State, 703 S.W.2d 380, 385
(Tex. App.âDallas 1986, pet. ref'd). Where fear of imminent bodily injury or death is
based on mere speculation as to the intentions of the complainant, and the evidence does
not show any grounds for such fear, a self-defense charge is not warranted. Broussard
v. State, 809 S.W.2d 556, 559 (Tex. App.âDallas 1991, pet. ref'd).
Â Â Â Â Â Â Â Â Â Â Self-defense is rarely raised where the defendant does not testify. Lavern v. State,
48 S.W.3d 356, 360 (Tex. App.âHouston [14th Dist.] 2001, pet. ref'd). That is not to say,
however, that a defendant must testify in order to raise the issue of self-defense. See
Smith v. State, 676 S.W.2d 584, 587 (Tex. Crim. App. 1984); Shelvin v. State, 884 S.W.2d
874, 878 (Tex. App.âAustin 1994, pet. ref'd). In Smith, the Texas Court of Criminal
Appeals concluded that, where witnesses to an altercation testify to the circumstances,
actions, and statements surrounding the alleged offense, such evidence may be sufficient
to raise the issue of self-defense. Smith, 676 S.W.2d at 587. So, while the issue of
self-defense may be raised by evidence other than the defendant's testimony, that
evidence must show that the defendant reasonably believed that force was necessary to
protect himself or herself against the unlawful force of another. See id. 
III.Â Â Â Â Â Â Analysis
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Smith Does Not Sufficiently Admit to the Conduct
Â Â Â Â Â Â Â Â Â Â Smith did not testify at trial. He, therefore, did not directly admit the State's
allegations. Nothing in the record shows that Smith admitted any participation in the
struggle resulting in Wyatt's injuries. Nowhere does Smith present evidence that "discloses
that [he] used force in repelling the attack of another." See Withers, 994 S.W.2d at 745. 
His only witness admitted that, at the time of the assault on Wyatt, he (the witness) was
not in a position to see what happened. Such witness merely heard Wyatt "hollering
saying that he had hit him." When the witness went to where he could see what was
happening, he merely saw that Wyatt had been cut and was "just sitting there . . . holding
his glasses." Therefore, Smith cannot seek to justify actions he never admitted to having
taken.
Â Â Â Â Â Â Â Â Â Â This conclusion is consistent with caselaw addressing similar arguments. For
instance, a nontestifying defendant presented testimony of another who denied that the
defendant performed the act alleged. East v. State, 76 S.W.3d 736, 738 (Tex.
App.âWaco 2002, no pet.). The Waco court concluded that East did not "substantially
admit" to the underlying conduct and, therefore, could not rely on a claim of self-defense. 
Id. Similarly, when a nontestifying defendant presented witnesses who testified to an alibi
defense, he was not entitled to a self-defense instruction. Wallace v. State, 75 S.W.3d
576, 587 (Tex. App.âTexarkana 2002), aff'd, 106 S.W.3d 103 (Tex. Crim. App. 2003). 
Here, Smith only presented evidence that Wyatt was injured and said that Smith had said
Wright had hit him.
Â Â Â Â Â Â Â Â Â Â In addition to showing Smith's failure to admit to the alleged conduct, the record also
otherwise fails to support Smith's argument on appeal. That is, there is no evidence that
raises the issue of whether Smith was justified in using force against Wyatt under the given
circumstances. We conclude that, even if Smith would have sufficiently admitted to
participation in the altercation, the evidence at trial does not otherwise raise the issue of
self-defense. 
Â Â Â Â Â Â Â Â Â Â B.Â Â Â Â Â Â Â The Evidence Does Not Otherwise Raise the Issue of Self-Defense
Â Â Â Â Â Â Â Â Â Â Even viewing the record in a light most favorable to Smith, we conclude that the
evidence fails to show he reasonably believed that force was necessary to protect himself
against the unlawful force of another. Again, Smith did not testify, so we do not have a
record of Smith's version of events in which he could have raised the issue. Smith relies
on Leary's testimony to argue that Smith "feared for his safety due to [the officers']
actions." Leary admitted he was unable to see portions of the altercation between Smith
and the officers. However, Leary testified that, in those portions of the struggle that he
could see, Hasler struck Smith on two occasions and Smith never struck Hasler back.
Â Â Â Â Â Â Â Â Â Â Also lacking from Leary's testimony is any evidence of what Smith said during the
altercation. He testified Smith appeared to be talking about "some problems" he was
having and expressed his desire to be moved from the cell. In Leary's testimony, we find
no indications that Smith acted in the appropriate state of mind to be entitled to a defensive
instruction. According to Leary, Smith never cursed or yelled in an aggressive manner at
the officers, facts which would have lent insight into Smith's state of mind. While Leary's
testimony does indicate that Wyatt was "excited" and Hasler was "aggressive," there is
nothing in the record indicating Smith feared immediate use of unlawful force. To the
contrary, according to Leary's account, Smith never reacted in an aggressive manner either
verbally or physically. Leary's testimony, therefore, does not raise the issue of self-defense.
Â Â Â Â Â Â Â Â Â Â Even viewing Leary's testimony in a light most favorable to Smith, we can only
conclude that Hasler was "aggressive" in the encounters with Smith and that Wyatt was
"excited." This, however, is not enough to raise the issue of self-defense in Smith's attack
on Wyatt. Without some evidence of "observable manifestations" of Smith's state of mind,
we cannot conclude Smith reasonably believed that force was necessary to protect himself
from the use of unlawful force. See Reed, 703 S.W.2d at 385. There must be evidence
showing that the defendant acted in the proper state of mind. Here, nothing in the record
shows that Smith feared immediate use of unlawful force at the time he attacked Wyatt. 
Â Â Â Â Â Â Â Â Â Â Â The officers' testimony does not raise the issue of self-defense either, since we
cannot find in the officers' testimony evidence that Smith struck Wyatt due to a reasonable
belief that force was immediately necessary to protect himself from the use of unlawful
force. Instead, from their testimony, it would appear that Smith was the aggressor in the
altercation. Wyatt testified Smith approached him and ran out of the cell. Hasler testified
he had to apprehend and restrain Smith against the hallway wall. It was after Smith's failed
attempt to again leave the cell and his assault on Wyatt that Hasler took him to the floor
in a forceful manner.
IV.Â Â Â Â Â Â Conclusion
Â Â Â Â Â Â Â Â Â Â Because the record does not show that Smith sufficiently admitted to some
affirmative physical conduct in the struggle with the officers and does not show that, at the
time of his assault on Wyatt, he reasonably believed that force was necessary to protect
himself from the use of unlawful force, the trial court did not err in refusing to instruct the
jury on the issue of self-defense. We overrule Smith's sole point of error.
Â Â Â Â Â Â Â Â Â Â Because the jury did not assess a fine against Smith, we reform the judgment to
delete the $1,000.00 fine that the trial court imposed. 
Â Â Â Â Â Â Â Â Â Â As reformed, we affirm the judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â November 17, 2005
Date Decided:Â Â Â Â Â Â Â Â Â December 1, 2005

Do Not Publish





;
margin-left:.5in;margin-bottom:.0001pt;text-align:justify;text-justify:inter-ideograph;
mso-pagination:widow-orphan;tab-stops:center 3.25in'>   V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  STEVEN SIMMONS, ET AL., Appellees

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 76th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Camp County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. CV-09-1204

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Appellant, Cordell
Moody, filed a notice of appeal September 9, 2010, Âfrom the final judgment of
the State Judicial District Court of Camp County, Texas, entered on or about
August, 2010.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  On receipt
of the clerkÂs record, we noted that a final judgment was entered in this cause
of action December 17, 2009.Â  We then
called the Camp County District Clerk and inquired whether there were any
further orders entered from which Moody might be appealing and were informed no
such orders existed.Â  Therefore, even
with a timely motion for new trial, the latest date a timely notice of appeal
could have been filed was March 17, 2010.Â 


Â Â Â Â Â Â Â Â Â Â Â  In
accordance with Rule 42.3 of the Texas Rules of Appellate Procedure, we
provided notice to Moody, requesting that he show this Court how we had
jurisdiction over this appeal.Â  Tex. R. App. P. 42.3.Â  We have received MoodyÂs response, and
considered it.Â  We do not find it to be
persuasive.

Â Â Â Â Â Â Â Â Â Â Â  We
dismiss this appeal for want of jurisdiction.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  October
13, 2010Â Â Â Â Â Â Â  

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  October
14, 2010