

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-156-CR

JOSIAH REED                                                                         APPELLANT

V.

THE STATE OF TEXAS                                                                       STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Josiah Reed appeals from his conviction for unauthorized use of a motor vehicle. In two points, he argues that the evidence is legally and factually insufficient to support the jury's rejection of his defense of necessity. We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## Background

Appellant shared a house with his girlfriend, Shane Dewbre; Andrew Walden; and Walden's girlfriend, Shirley Hatcher. On December 7, 2003, Dewbre told Appellant that she wanted him to move out. Dewbre testified that she had given the keys to her minivan to Walden so that Walden could drive Appellant and his possessions to Appellant's grandmother's house. The original plan was for Dewbre to drive Appellant to his grandmother's, but Dewbre agreed to let Walden drive Appellant when Walden insisted that she allow him to do so. Dewbre testified that she did not give Appellant permission to drive the van.

Walden testified that he helped Appellant pack and load the van. According to Walden, Appellant agreed to allow him, rather than Dewbre, to drive Appellant to his grandmother's house. Walden said that when he went back into the house to tell Dewbre that Appellant agreed to the change in plan, they heard the van's engine start. Walden said that he thought he had left the keys in the van's ignition switch, but he was not sure. Walden ran out and attempted to jump through the window behind the driver's seat as Appellant drove away. Walden testified that Appellant accelerated and swerved from curb to curb and that he fell off of the van after a few blocks.

Walden went back to the house, then went looking for Appellant. Eventually, Appellant called the house from his grandmother's cell phone. Appellant agreed to return the van. Meanwhile, two of Walden's friends—Jeremy Hinchman and John Vargas—arrived at the house.

Walden testified that when Appellant returned to the house with the van, Hinchman went out to get the keys from him. Hinchman testified that he and Vargas went to talk to Appellant and convince him to go into the house but that Appellant stayed in the van and yelled at them. Hinchman testified that Appellant attempted to run him and Vargas over with the van. He said that Walden then came out of the house and that Appellant put the van in reverse, backed up seventy-five feet, ran over Walden, pulled forward, then backed up and ran over Walden a second time.

Walden testified that he left the house's porch when he saw Appellant attempt to run over Hinchman and Vargas and that Appellant backed up, ran over him, and dragged him down the street, causing him serious bodily injury. He said that as Appellant ran over him, Hinchman climbed on the van's hood and smashed the windshield with his hand. Hinchman also testified that he broke the windshield with his fist in an attempt to make Appellant stop.

Appellant testified that he, Dewbre, and Walden were methamphetamine users and that Walden had been growing increasingly aggressive. He said that

3

in November 2003, Walden shot a gun at a man who refused to procure drugs for Walden; Appellant said he was scared of Walden after that. He testified that on the day of the incident, Dewbre handed her keys to him, told him to load his belongings into the van, and said that she would drive him to his grandmother's house.

According to Appellant, after he had loaded the van, Walden told him that he and Walden had to go retrieve money from a friend of Appellant's who had taken the money as part of an attempt to purchase drugs. Appellant testified that he was afraid that he and Walden were about to fight, so when Walden went back into the house, Appellant started the van—he said he still had the keys—and drove away. He acknowledged that he did not have Dewbre's consent to drive the van. Appellant said that he became aware that Walden was holding onto the van, so he drove up on a curb, and Walden let go. Appellant testified that he then drove to his brother's house five blocks away and asked his brother to check on Walden.

Appellant said that he drove to his grandmother's home, unloaded the van, and called Dewbre to see if she wanted him to return the van. He drove back to Dewbre's house and honked the horn to get Dewbre's attention; he testified that he did not want to go into the house because he was afraid that Walden was inside. Appellant said that Hinchman and Vargas came out of the

4

house and tried to open the van's doors, that Vargas had a knife, and that Hinchman climbed on the van's front bumper and broke the windshield with a baseball bat. Appellant said that he "freaked out" and drove the van forward and then backward to dislodge Hinchman from the bumper. Appellant testified that he did not see Walden and did not know he had run over him. Appellant said that he drove to a friend's house and called the police.

The grand jury indicted Appellant for unauthorized use of a motor vehicle.[2] At trial, Appellant asserted the defense of necessity; that is, he argued that it was necessary for him to drive off in Dewbre's van to avoid an altercation with Walden. The trial court charged the jury on necessity. The jury convicted Appellant, and the trial court assessed punishment at one year in the State jail.

### Standard of Review

When reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*

---

[2] The record suggests that the grand jury also indicted Appellant for aggravated assault, but that alleged offense is not the subject of this appeal.

*v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

After the defendant has introduced some evidence of a defense, the State bears the burden of persuasion to disprove it. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). This burden does not require the State to introduce evidence disproving the defense; rather, it requires the State to prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. To determine sufficiency of the evidence to disprove a nonaffirmative defense, the appellate court asks whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the defensive issue beyond a reasonable doubt. *Saxton,* 804 S.W.2d at 914.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and

6

manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The reviewing court applies the same standard of review when a defendant challenges the factual sufficiency of the rejection of a defense. *See Zuliani*, 97 S.W.2d at 595. A guilty finding is an implicit rejection of the defense. *Zuliani*, 97 S.W.3d at 594.

**Discussion**

Under the defense of necessity, a defendant's actions are justified if the actor reasonably believes the conduct is immediately necessary to avoid imminent harm, the desirability or urgency of avoiding the harm clearly outweighs the harm sought to be prevented by the laws proscribing the conduct, and a legislative purpose to exclude the justification does not otherwise plainly appear. *See* TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). "Imminent" means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). Harm is imminent when there is an emergency situation and the actor's conduct is immediately necessary to avoid that harm. *Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref'd). In other words, a split-second decision would be

7

required—without time to consider the law—for a danger to be considered imminent. *Id.* Furthermore, the defense of necessity requires substantially admitting the committed offense or at a minimum admitting the conduct that forms that offense. *See Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); *see also Hubbard v. State*, 133 S.W.3d 797, 801 (Tex. App.—Texarkana 2004, pet. ref'd).

In this case, Appellant admitted that he committed the offense when he acknowledged that he drove the van without Dewbre's consent. He also offered testimony that he believed that he was in some danger from Walden. However, a rational fact-finder could conclude that the danger did not create an emergency that required a split-second decision. The jury was free to believe Walden and Dewbre; their testimony did not support Appellant's claim of imminent danger. Moreover, Appellant testified that he drove away in the van when Walden went back into the house; he did not explain why he did not take that opportunity to walk or run away to a safe location, such as his brother's house just five blocks away. The fact that he later voluntarily drove back to Dewbre's house, where he knew or suspected Walden was, further undermines his assertion that he believed that Walden posed an imminent danger to him or that driving away in the van was immediately necessary to avoid the supposed danger.

8

Viewing the evidence in the light most favorable to the verdict, we hold that it is legally sufficient to support the jury's finding of guilt and its implicit rejection of Appellant's necessity defense. *See Clayton*, 235 S.W.3d at 778; *Zuliani*, 97 S.W.3d at 594. Viewing the evidence in a neutral light, we hold that it is also factually sufficient. *See Watson*, 204 S.W.3d at 414.

We overrule both of Appellant's points and affirm the trial court's judgment.

PER CURIAM

PANEL F: GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: May 1, 2008