COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-156-CR

 

 

JOSIAH REED                                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Josiah Reed appeals
from his conviction for unauthorized use of a motor vehicle.  In two points, he argues that the evidence is
legally and factually insufficient to support the jury=s rejection of his defense of necessity.  We affirm.

 








                                            Background

Appellant shared a house with
his girlfriend, Shane Dewbre; Andrew Walden; and Walden=s girlfriend, Shirley Hatcher. 
On December 7, 2003, Dewbre told Appellant that she wanted him to move
out.  Dewbre testified that she had given
the keys to her minivan to Walden so that Walden could drive Appellant and his
possessions to Appellant=s
grandmother=s
house.  The original plan was for Dewbre
to drive Appellant to his grandmother=s, but Dewbre agreed to let Walden drive Appellant when Walden
insisted that she allow him to do so. 
Dewbre testified that she did not give Appellant permission to drive the
van. 

Walden testified that he
helped Appellant pack and load the van. 
According to Walden, Appellant agreed to allow him, rather than Dewbre,
to drive Appellant to his grandmother=s house.  Walden said that when
he went back into the house to tell Dewbre that Appellant agreed to the change
in plan, they heard the van=s engine start.  Walden said
that he thought he had left the keys in the van=s ignition switch, but he was not sure.  Walden ran out and attempted to jump through
the window behind the driver=s seat as Appellant drove away. 
Walden testified that Appellant accelerated and swerved from curb to
curb and that he fell off of the van after a few blocks. 








Walden went back to the
house, then went looking for Appellant. 
Eventually, Appellant called the house from his grandmother=s cell phone.  Appellant agreed
to return the van.  Meanwhile, two of
Walden=s friendsCJeremy
Hinchman and John VargasCarrived at
the house.  

Walden testified that when
Appellant returned to the house with the van, Hinchman went out to get the keys
from him.  Hinchman testified that he and
Vargas went to talk to Appellant and convince him to go into the house but that
Appellant stayed in the van and yelled at them. 
Hinchman testified that Appellant attempted to run him and Vargas over
with the van.  He said that Walden then
came out of the house and that Appellant put the van in reverse, backed up
seventy-five feet, ran over Walden, pulled forward, then backed up and ran over
Walden a second time. 

        Walden testified that he left the house=s porch when he saw Appellant attempt to run over Hinchman and Vargas
and that Appellant backed up, ran over him, and dragged him down the street,
causing him serious bodily injury. He said that as Appellant ran over him,
Hinchman climbed on the van=s hood and smashed the windshield with his hand.  Hinchman also testified that he broke the
windshield with his fist in an attempt to make Appellant stop. 








Appellant testified that he,
Dewbre, and Walden were methamphetamine users and that Walden had been growing
increasingly aggressive.  He said that in
November 2003, Walden shot a gun at a man who refused to procure drugs for
Walden; Appellant said he was scared of Walden after that.  He testified that on the day of the incident,
Dewbre handed her keys to him, told him to load his belongings into the van,
and said that she would drive him to his grandmother=s house.  

According to Appellant, after
he had loaded the van, Walden told him that he and Walden had to go retrieve
money from a friend of Appellant=s who had taken the money as part of an attempt to purchase
drugs.  Appellant testified that he was
afraid that he and Walden were about to fight, so when Walden went back into
the house, Appellant started the vanChe said he still had the keysCand drove away.  He acknowledged
that he did not have Dewbre=s consent to drive the van. 
Appellant said that he became aware that Walden was holding onto the
van, so he drove up on a curb, and Walden let go. Appellant testified that he
then drove to his brother=s house five
blocks away and asked his brother to check on Walden. 








Appellant said that he drove
to his grandmother=s home,
unloaded the van, and called Dewbre to see if she wanted him to return the
van.  He drove back to Dewbre=s house and honked the horn to get Dewbre=s attention; he testified that he did not want to go into the house
because he was afraid that Walden was inside. 
Appellant said that Hinchman and Vargas came out of the house and tried
to open the van=s doors,
that Vargas had a knife, and that Hinchman climbed on the van=s front bumper and broke the windshield with a baseball bat.  Appellant said that he Afreaked out@ and drove
the van forward and then backward to dislodge Hinchman from the bumper.  Appellant testified that he did not see
Walden and did not know he had run over him. 
Appellant said that he drove to a friend=s house and called the police. 

The grand jury indicted
Appellant for unauthorized use of a motor vehicle.[2]  At trial, Appellant asserted the defense of
necessity; that is, he argued that it was necessary for him to drive off in
Dewbre=s van to avoid an altercation with Walden.  The trial court charged the jury on
necessity.  The jury convicted Appellant,
and the trial court assessed punishment at one year in the State jail. 

                                       Standard of Review








When reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

After the defendant has
introduced some evidence of a defense, the State bears the burden of persuasion
to disprove it.  Zuliani v. State,
97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d
910, 913B14 (Tex. Crim. App. 1991).  This
burden does not require the State to introduce evidence disproving the defense;
rather, it requires the State to prove its case beyond a reasonable doubt.  Zuliani, 97 S.W.3d at 594; Saxton,
804 S.W.2d at 913.  To determine
sufficiency of the evidence to disprove a nonaffirmative defense, the appellate
court asks whether, after viewing all the evidence in the light most favorable
to the prosecution, any rational trier of fact would have found the essential
elements of the offense beyond a reasonable doubt and also would have found
against appellant on the defensive issue beyond a reasonable doubt.  Saxton, 804 S.W.2d at 914.  








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  The reviewing court applies the same standard
of review when a defendant challenges the factual sufficiency of the rejection
of a defense.  See Zuliani, 97
S.W.2d at 595.  A guilty finding is an
implicit rejection of the defense.  Zuliani,
97 S.W.3d at 594.

                                             Discussion








Under the defense of
necessity, a defendant=s actions
are justified if the actor reasonably believes the conduct is immediately
necessary to avoid imminent harm, the desirability or urgency of avoiding the
harm clearly outweighs the harm sought to be prevented by the laws proscribing
the conduct, and a legislative purpose to exclude the justification does not
otherwise plainly appear.  See Tex. Penal Code Ann. ' 9.22 (Vernon 2003).  AImminent@ means Aready to take place, near at hand, impending, hanging threateningly
over one=s head, menacingly near.@  Devine v. State, 786
S.W.2d 268, 270 (Tex. Crim. App. 1989). 
Harm is imminent when there is an emergency situation and the actor=s conduct is immediately necessary to avoid that harm.  Jackson v. State, 50 S.W.3d 579, 595
(Tex. App.CFort Worth
2001, pet. ref=d).  In other words, a split‑second decision
would be requiredCwithout time
to consider the lawCfor a danger
to be considered imminent.  Id.  Furthermore, the defense of necessity requires
substantially admitting the committed offense or at a minimum admitting the
conduct that forms that offense.  See
Young v. State, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); see also
Hubbard v. State, 133 S.W.3d 797, 801 (Tex. App.CTexarkana 2004, pet. ref=d).

In this case, Appellant
admitted that he committed the offense when he acknowledged that he drove the
van without Dewbre=s
consent.  He also offered testimony that
he believed that he was in some danger from Walden.  However, a rational fact-finder could
conclude that the danger did not create an emergency that required a
split-second decision.  The jury was free
to believe Walden and Dewbre; their testimony did not support Appellant=s claim of imminent danger. 
Moreover, Appellant testified that he drove away in the van when Walden
went back into the house; he did not explain why he did not take that
opportunity to walk or run away to a safe location, such as his brother=s house just five blocks away. 
The fact that he later voluntarily drove back to Dewbre=s house, where he knew or suspected Walden was, further undermines his
assertion that he believed that Walden posed an imminent danger to him or that
driving away in the van was immediately necessary to avoid the supposed danger.








Viewing the evidence in the
light most favorable to the verdict, we hold that it is legally sufficient to
support the jury=s finding of
guilt and its implicit rejection of Appellant=s necessity defense.  See
Clayton, 235 S.W.3d at 778; Zuliani, 97 S.W.3d at 594.  Viewing the evidence in a neutral light, we
hold that it is also factually sufficient. 
See Watson, 204 S.W.3d at 414.

We overrule both of Appellant=s points and affirm the trial court=s judgment.

PER CURIAM

 

PANEL F:    GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
May 1, 2008











[1]See Tex. R. App. P. 47.4.





[2]The
record suggests that the grand jury also indicted Appellant for aggravated
assault, but that alleged offense is not the subject of this appeal.