In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00096-CR


______________________________




JERRY DEAN MAYFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33049-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 When Longview police officer Lanie Smith saw Jerry Dean Mayfield turn his vehicle without
signaling, Smith turned on his overhead lights and pulled in behind the car to effect a traffic stop. 
But Mayfield did not stop the car. Instead, Mayfield continued to drive slowly. During this low-speed pursuit, a female passenger jumped out of Mayfield's vehicle during a rolling stop, and
Mayfield continued to drive in an apparently random fashion. Mayfield finally returned to the street
where his passenger had jumped out, stopped the car, and attempted to run away. Mayfield was
caught after a short chase on foot.

 Mayfield's resulting conviction for evading arrest with a vehicle was followed by an
enhancement of Mayfield's sentence, and the jury assessed his punishment at twenty years'
imprisonment and a $10,000.00 fine. (1) On appeal, Mayfield complains that the State did not give him
adequate notice of its intent to use prior convictions for enhancement purposes and that the evidence
was factually insufficient to show he intentionally fled from the officer. We affirm because (1) under
the circumstances, Mayfield received adequate notice, and (2) factually sufficient evidence supports
Mayfield's conviction.

(1) Under the Circumstances, Mayfield Received Adequate Notice

 Mayfield's counsel contends that she first knew the specific convictions the State intended
to use when a packet containing them was handed to her at voir dire and that the complete notice
finally provided was simply too late to be effective. The indictment does not mention enhancements. 
The record indicates that counsel had been informed in April 2005 that the State intended to attempt
to enhance Mayfield's sentence with his prior felony record unless he pled to an information. No
further detail was provided Mayfield at that time. The State notes that it attempted to supplement
that information by fax, the week before trial, but apparently the fax transmission was not completed
because the State used the wrong number. The trial court concluded that the earlier notification was
an adequate notice of enhancement and proceeded with voir dire. 

 A defendant is entitled to notice of prior convictions to be used for enhancement. Brooks v.
State, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997). Alleging a sentence enhancement in the
indictment is not the only reasonable method of conveying such notice. Id. at 32. The State need
only plead the information somewhere. Id.; see also Chimney v. State, 6 S.W.3d 681, 696 (Tex.
App.--Waco 1999, pet. ref'd). (2)

 Though Mayfield states that he complains, not about the timeliness of notice, but instead
about the sufficiency of the descriptions of the prior convictions, his effective complaint is that
notice of the specific offenses to be used for enhancement purposes is not timely because it was not
given until voir dire. 

 When a defendant has no defense to an enhancement allegation and makes no suggestion of
the need for a continuance in order to prepare a defense, adequate notice, given even at the beginning
of the punishment phase, satisfies the due-process requirements of the United States
Constitution--as well as the Texas Constitution's "due course of law" requirements. Villescas v.
State, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006); see Oyler v. Boles, 368 U.S. 448 (1962). 
Mayfield asserted no defense to the enhancement allegation--he pled true to the prior convictions
once the trial court explained the result of his plea and questioned him about it. Nor did Mayfield
suggest that a continuance was necessary to discover or prepare a defense. That procedural posture
makes the difference here.

 Of course, the State should practice providing timely, adequate pretrial notice of
enhancements--the failure to do so in a more timely fashion may result in trials delayed or
punishment hearings delayed while a defendant gathers necessary evidence to address enhancement
allegations. 

 On these facts, however, constitutionally adequate notice was given by providing the specific
information before the punishment phase--here, at voir dire. Because Mayfield did not seek a
continuance and because he pled true to the enhancements, we find no error in proceeding with the
trial.

 We overrule this point of error.



(2) Factually Sufficient Evidence Supports Mayfield's Conviction

 Mayfield next contends the evidence is factually insufficient to show that he intentionally fled
from the officer. In a factual sufficiency review, we view all the evidence in a neutral light and
determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly
wrong and manifestly unjust or whether the great weight and preponderance of the evidence is
contrary to the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).

 Section 38.04 of the Texas Penal Code criminalizes the act of intentionally fleeing from a
person the actor knows is a peace officer attempting lawfully to arrest or detain him or her. Tex.
Penal Code Ann. § 38.04 (Vernon 2003). The crime is a misdemeanor unless the actor uses a
vehicle, at which point it becomes a felony offense. There is evidence that Mayfield was driving,
that the officer had cause to stop him for a traffic violation, that the officer was in a marked squad
car with emergency lights flashing and siren sounding, and that Mayfield did not stop for an
extended period of time. The statute does not require high-speed fleeing, or even effectual fleeing. 
It requires only an attempt to get away from a known officer of the law. Thus, under the law, fleeing
slowly is still fleeing. There is factually sufficient evidence to support the verdict, and no evidence
to the contrary.



 We affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: March 22, 2007


Publish

1. The punishment for the offense was assessed based on enhancement by prior felony
convictions to the level of a second-degree felony.
2. If prior offenses are simply mentioned or noticed for no specified purpose, that fails to give
the necessary notice they will be used for sentence enhancement. Fairrow v. State, 112 S.W.3d 288,
290-92 (Tex. App.--Dallas 2003, no pet.) ("Notice of Extraneous Offenses" notified defendant of
intent to introduce prior convictions into evidence at trial, but made no reference to sentence
enhancement). 


ved at the fourth floor with some inmates who had been to court. Wyatt and
Hasler then began the process of returning these inmates to their respective cells. One
of these inmates was to be returned to Smith's cell. When Wyatt opened the cell door,
Smith handed him the "med call sheet," complained that he wanted out of the cell, and
then bolted out the cell door. Hasler apprehended, restrained, and returned Smith to the
cell. 
          While Wyatt continued the process of situating the returning inmates, Smith
attempted to get out of the cell again. He was stopped, pushed into the cell, and fell to the
floor. When the officers tried to close the cell door, Smith, still lying on the floor, stuck his
legs out the door preventing the officers from closing it. Wyatt then entered the cell, lifted
Smith from the floor by Smith's shirt, and slid him about three feet farther into the cell. 
Wyatt testified this was the only time he touched Smith. 
          As Wyatt turned to exit the cell, and as Hasler stood near the entrance of the cell,
Smith hit Wyatt "up side the head" from behind. The blow broke Wyatt's glasses, causing
the lens to slice his cheek, spun him around, and knocked him against the door. Hasler
entered the cell, put Smith to the floor, and placed handcuffs on him. Wyatt secured the
door. Smith was later taken to an isolation cell. Wyatt suffered injuries to his face and eye. 
Wyatt testified that he never struck Smith and that he never saw Hasler strike Smith during
the struggle. Hasler testified that Smith did not strike Hasler during the struggle but that
Smith did strike Wyatt with his fists. Hasler also testified Wyatt never struck Smith. 
          Smith did not testify at trial. He called one witness to testify to a different version
of events. Landungeran Leary, an inmate from the group waiting to be escorted by Hasler
to the basement level, testified in Smith's defense. According to Leary, Smith went to
Wyatt complaining of "some problems" and wanting to be moved. He testified that,
although Smith was not acting in an aggressive manner, Wyatt called for Hasler's
assistance. He characterized Wyatt as "excited" and Hasler as "aggressive." He explained
that Hasler manhandled Smith out of the cell and into the hall. He testified Hasler
slammed Smith into the hallway wall and struck Smith as he was pinned against the wall. 
He testified Smith never threatened, cursed, or hit Hasler. He was clear in his testimony
that Smith never fought back. Leary further testified that, after Hasler and Wyatt put Smith
back in his cell, Hasler walked away and Leary then heard Wyatt "hollering saying that he
had hit him." Leary went to see what was happening. He saw Wyatt "just sitting there. He
had a cut. He was sitting there holding his glasses." Leary testified he then saw Hasler
grab Smith again, slam him against the wall, and then slam him to the floor and put his
knee in the back of Smith's neck. Smith was then placed in what Leary described as a
"separation cell."
          Smith requested but was denied a jury charge on self-defense. 
II.       Applicable Law
          A.       Self-Defense
          In general, a person is justified in using force against another person ''when and to
the degree'' the person ''reasonably believes the force is immediately necessary'' for
protection against that other person's use or attempted use of unlawful force. Tex. Pen.
Code Ann. § 9.31(a) (Vernon 2003); see also Tex. Pen. Code Ann. § 1.07(a)(42), (48)
(Vernon Supp. 2005) (defining ''reasonable belief'' and ''unlawful''). The actor is not
justified in using force if the actor is responding to mere verbal provocation, a search or
arrest by a peace officer, or force that the actor consented to or provoked, or if the actor
sought an explanation from or discussion with the other person concerning their differences
while the actor was unlawfully carrying a weapon. Tex. Pen. Code Ann. § 9.31(b) (Vernon
2003).
          B.       Entitlement to Defensive Instruction
                     1.       Admitting to Conduct
          Generally, to be entitled to a defensive instruction, a defendant must admit the
conduct charged in the indictment and then offer evidence justifying the conduct. See
Young v. State, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999); Hubbard v. State, 133
S.W.3d 797, 799 (Tex. App.—Texarkana 2004, pet. ref'd). Admitting the conduct,
however, does not necessarily mean admitting the commission of every statutory element
of the offense. Jackson v. State, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.]
2003, pet. ref'd). Instead, a defendant who denies the state's specific allegations may still
obtain a defensive instruction if he or she sufficiently admits the conduct underlying the
alleged offense. See Young, 991 S.W.2d at 838; Hubbard, 133 S.W.3d at 801–02;
Jackson, 110 S.W.3d at 631–32. 
          When the defendant in Holloman admitted to the use of force, although not in the
exact form as alleged by the state, such an admission tracked the language of the Texas
Penal Code that states a person is justified in using "force" under certain circumstances. 
Holloman v. State, 948 S.W.2d 349, 352 (Tex. App.—Amarillo 1997, no pet.). In Holloman,
a husband who was charged with assaulting his wife claimed he acted in self-defense. Id.
at 351. He conceded striking his wife, "tussling" with her, falling on her, and possibly hitting
her with his legs after falling. Id. The Holloman court held that his testimony sufficiently
admitted the conduct alleged, although it was not an outright admission to assault and
concluded that this evidence, although possibly feeble, entitled Holloman to raise the issue
of self-defense. Id. at 352. 
          When determining whether the evidence raised the defense of necessity, self-defense, and defense of another, the Corpus Christi court relied on Holloman to conclude,
"if evidence is presented which discloses that the defendant used force in repelling the
attack of another, . . . there is no legitimate reason why he [or she] should be denied the
defense simply because he [or she] refused to admit to using the type of force alleged by
the State." Withers v. State, 994 S.W.2d 742, 745 (Tex. App.—Corpus Christi 1999, pet.
ref'd). Defendant Withers admitted to having engaged in a physical altercation, but
contested certain allegations, denying, for instance, allegations that she pushed the
complainant to the floor and grabbed his neck. Id. at 746. The court concluded that
Withers had sufficiently admitted the conduct alleged so as to allow her to raise the issue
of justification and that the trial court's refusal to include defensive instructions was error. 
Id.; see also Kemph v. State, 12 S.W.3d 530, 532 (Tex. App.—San Antonio 1999, pet.
ref'd) (holding, in resisting-arrest case, defendant was entitled to self-defense instruction
when he admitted to struggling against officers but denied, contrary to officers' testimony,
attempting to bite or kick them).
          In Hubbard, the record established that, although Hubbard did not admit
intentionally, knowingly, or recklessly causing Townsel's death, he did admit the conduct
underlying the offense, that is, striking Townsel. Hubbard, 133 S.W.3d at 801. We held
this admission sufficient to satisfy the admission element required to raise the issue of the
related defense of necessity. Id. at 802. In contrast, an appellant was not entitled to a jury
instruction on the defense of necessity when he argued he did not commit the offense
because he did not have the requisite intent and did not perform the actions alleged. 
Young, 991 S.W.2d at 839.
                     2.       Issue Raised by the Evidence
          A defendant is entitled to an instruction on the law of self-defense if there is some
evidence he or she intended to use force against another and did use force, but did so only
because he or she reasonably believed it was necessary to prevent the other's use of
unlawful force. Ex parte Nailor, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004). A defendant
is entitled to an instruction on self-defense if the issue is raised by the evidence regardless
of whether such evidence is strong, feeble, impeached, or contradicted, and even if in the
trial court's opinion the testimony is not entitled to belief. Ferrel v. State, 55 S.W.3d 586,
591 (Tex. Crim. App. 2001). 
          However, if the evidence, viewed in the light most favorable to the defendant, does
not raise the issue of self-defense, the defendant is not entitled to an instruction on the
issue. Id. If the record does not reflect any evidence of an appellant's state of mind or
observable manifestations of the appellant's state of mind, then the appellant is not entitled
to a jury instruction on the issue of self-defense. Reed v. State, 703 S.W.2d 380, 385
(Tex. App.—Dallas 1986, pet. ref'd). Where fear of imminent bodily injury or death is
based on mere speculation as to the intentions of the complainant, and the evidence does
not show any grounds for such fear, a self-defense charge is not warranted. Broussard
v. State, 809 S.W.2d 556, 559 (Tex. App.—Dallas 1991, pet. ref'd).
          Self-defense is rarely raised where the defendant does not testify. Lavern v. State,
48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). That is not to say,
however, that a defendant must testify in order to raise the issue of self-defense. See
Smith v. State, 676 S.W.2d 584, 587 (Tex. Crim. App. 1984); Shelvin v. State, 884 S.W.2d
874, 878 (Tex. App.—Austin 1994, pet. ref'd). In Smith, the Texas Court of Criminal
Appeals concluded that, where witnesses to an altercation testify to the circumstances,
actions, and statements surrounding the alleged offense, such evidence may be sufficient
to raise the issue of self-defense. Smith, 676 S.W.2d at 587. So, while the issue of
self-defense may be raised by evidence other than the defendant's testimony, that
evidence must show that the defendant reasonably believed that force was necessary to
protect himself or herself against the unlawful force of another. See id. 
III.      Analysis
          A.       Smith Does Not Sufficiently Admit to the Conduct
          Smith did not testify at trial. He, therefore, did not directly admit the State's
allegations. Nothing in the record shows that Smith admitted any participation in the
struggle resulting in Wyatt's injuries. Nowhere does Smith present evidence that "discloses
that [he] used force in repelling the attack of another." See Withers, 994 S.W.2d at 745. 
His only witness admitted that, at the time of the assault on Wyatt, he (the witness) was
not in a position to see what happened. Such witness merely heard Wyatt "hollering
saying that he had hit him." When the witness went to where he could see what was
happening, he merely saw that Wyatt had been cut and was "just sitting there . . . holding
his glasses." Therefore, Smith cannot seek to justify actions he never admitted to having
taken.
          This conclusion is consistent with caselaw addressing similar arguments. For
instance, a nontestifying defendant presented testimony of another who denied that the
defendant performed the act alleged. East v. State, 76 S.W.3d 736, 738 (Tex.
App.—Waco 2002, no pet.). The Waco court concluded that East did not "substantially
admit" to the underlying conduct and, therefore, could not rely on a claim of self-defense. 
Id. Similarly, when a nontestifying defendant presented witnesses who testified to an alibi
defense, he was not entitled to a self-defense instruction. Wallace v. State, 75 S.W.3d
576, 587 (Tex. App.—Texarkana 2002), aff'd, 106 S.W.3d 103 (Tex. Crim. App. 2003). 
Here, Smith only presented evidence that Wyatt was injured and said that Smith had said
Wright had hit him.
          In addition to showing Smith's failure to admit to the alleged conduct, the record also
otherwise fails to support Smith's argument on appeal. That is, there is no evidence that
raises the issue of whether Smith was justified in using force against Wyatt under the given
circumstances. We conclude that, even if Smith would have sufficiently admitted to
participation in the altercation, the evidence at trial does not otherwise raise the issue of
self-defense. 
          B.       The Evidence Does Not Otherwise Raise the Issue of Self-Defense
          Even viewing the record in a light most favorable to Smith, we conclude that the
evidence fails to show he reasonably believed that force was necessary to protect himself
against the unlawful force of another. Again, Smith did not testify, so we do not have a
record of Smith's version of events in which he could have raised the issue. Smith relies
on Leary's testimony to argue that Smith "feared for his safety due to [the officers']
actions." Leary admitted he was unable to see portions of the altercation between Smith
and the officers. However, Leary testified that, in those portions of the struggle that he
could see, Hasler struck Smith on two occasions and Smith never struck Hasler back.
          Also lacking from Leary's testimony is any evidence of what Smith said during the
altercation. He testified Smith appeared to be talking about "some problems" he was
having and expressed his desire to be moved from the cell. In Leary's testimony, we find
no indications that Smith acted in the appropriate state of mind to be entitled to a defensive
instruction. According to Leary, Smith never cursed or yelled in an aggressive manner at
the officers, facts which would have lent insight into Smith's state of mind. While Leary's
testimony does indicate that Wyatt was "excited" and Hasler was "aggressive," there is
nothing in the record indicating Smith feared immediate use of unlawful force. To the
contrary, according to Leary's account, Smith never reacted in an aggressive manner either
verbally or physically. Leary's testimony, therefore, does not raise the issue of self-defense.
          Even viewing Leary's testimony in a light most favorable to Smith, we can only
conclude that Hasler was "aggressive" in the encounters with Smith and that Wyatt was
"excited." This, however, is not enough to raise the issue of self-defense in Smith's attack
on Wyatt. Without some evidence of "observable manifestations" of Smith's state of mind,
we cannot conclude Smith reasonably believed that force was necessary to protect himself
from the use of unlawful force. See Reed, 703 S.W.2d at 385. There must be evidence
showing that the defendant acted in the proper state of mind. Here, nothing in the record
shows that Smith feared immediate use of unlawful force at the time he attacked Wyatt. 
           The officers' testimony does not raise the issue of self-defense either, since we
cannot find in the officers' testimony evidence that Smith struck Wyatt due to a reasonable
belief that force was immediately necessary to protect himself from the use of unlawful
force. Instead, from their testimony, it would appear that Smith was the aggressor in the
altercation. Wyatt testified Smith approached him and ran out of the cell. Hasler testified
he had to apprehend and restrain Smith against the hallway wall. It was after Smith's failed
attempt to again leave the cell and his assault on Wyatt that Hasler took him to the floor
in a forceful manner.
IV.      Conclusion
          Because the record does not show that Smith sufficiently admitted to some
affirmative physical conduct in the struggle with the officers and does not show that, at the
time of his assault on Wyatt, he reasonably believed that force was necessary to protect
himself from the use of unlawful force, the trial court did not err in refusing to instruct the
jury on the issue of self-defense. We overrule Smith's sole point of error.
          Because the jury did not assess a fine against Smith, we reform the judgment to
delete the $1,000.00 fine that the trial court imposed. 
          As reformed, we affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      November 17, 2005
Date Decided:         December 1, 2005

Do Not Publish